# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHY GOODMAN, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>INTERVET, INC. d/b/a MERCK ANIMAL HEALTH d/b/a HOME AGAIN,<br><br>    Defendant. | **Case No.**<br><br>CLASS ACTION COMPLAINT<br><br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Cathy Goodman ("Plaintiff"), on behalf of herself and all others similarly situated, brings this Complaint against Defendant Intervet, Inc., d/b/a Merck Animal Health d/b/a Home Again ("Home Again" or "Defendant"), and states as follows:

## NATURE OF THE ACTION

1.     This is a class action brought on behalf of Plaintiff and similarly situated pet owners who were deceived into purchasing annual Home Again memberships after their pets received Home Again microchips based on Home Again's misrepresentations and omissions that such memberships are required in order to stay registered in the Home Again database.

2.     In recent years, an increasing number of pet owners have elected to have their pets microchipped for the peace of mind that in the unlikely event their pet is lost, a microchip may allow their pet to return home safely.

3.     Home Again, a subsidiary of Merck, is a multi-billion-dollar company that profits handsomely from the sale of its microchips. This case does not concern the microchips themselves, but instead concerns Home Again's deceptive marketing of its membership program, which it

tricks consumers into purchasing based on the mistaken belief that such memberships are necessary to maintain pet owners' contact information in the Home Again database.

4.      Here's how it works. Immediately after a pet receives a Home Again microchip, the pet's owner is provided paperwork from Home Again which allows the pet owner to enroll in the Home Again database.

5.      The database is what allows the microchip to function. If a pet is lost and the pet's microchip is scanned, the Home Again database maintains and provides the contact information for the pet's owner. The database, in other words, is the entire reason why consumers purchase microchips: the database enables reunions between owners and their lost pets.

6.      But what consumers do not realize—and Home Again intentionally obscures—is that after the initial registration, the owner's contact information remains in the Home Again database, for free, forever. Likewise, the owner's contact information can always be updated, for free, forever. In other words, consumers do not need to purchase a Home Again annual membership to keep or update their contact information in Home Again's database; it will remain in the database regardless of a consumer's membership status and the contact information can always be updated, free of charge.

7.      But Home Again profits from keeping that secret. That is why in marketing materials, Home Again consistently links its annual "membership" with its "database"—even though the two have nothing to do with each other. In other words, Home Again intentionally leads consumers to believe that payment of its membership fee is required to stay within the Home Again database, when it is not.

8.      In fact, Home Again's annual membership provides pet owners with useless services that no reasonable consumer would pay for if they realized what they were actually

buying. Specifically, the membership provides pet owners with lost pet alerts, an emergency medical hotline, and travel assistance for lost pets who are found more than 500 miles away from their home. These services provide little practical value and are not the reason that consumers continue to pay the annual fee.

9.      Home Again's misrepresentations and omissions are misleading. If consumers knew they were not required to pay the annual fee to maintain their information in the Home Again database, they would not pay for the membership.

10.      Plaintiff and other consumers have been damaged by Home Again's misleading and deceptive conduct. Plaintiff brings this action on behalf of herself the putative Class, and the general public. Plaintiff seeks actual damages, statutory damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Home Again from continuing to engage in its illegal practices described herein.

## PARTIES

11.      Plaintiff is a citizen and resident of Los Angeles, California. Plaintiff enrolled in Home Again's membership for her dog, Schmooley, in 2018.

12.      Defendant maintains its principal place of business in Madison, New Jersey and is incorporated in Delaware.

## JURISDICTION AND VENUE

13.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiff) and one Defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant is based here and therefore a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this District.

15.     This Court has personal jurisdiction over Defendant because the Defendant's headquarters are located in this State.

## FACTUAL ALLEGATIONS

**A.      Background: Pet Microchipping is a Popular Way to Minimize the Chance of Losing A Pet**

16.     An astounding 67% of American households, or 85 million families, own a pet.

17.     The pet industry—once limited to Milkbones and kibble—has exploded in popularity with several corporations beginning in recent years to market and sell pet-oriented products and services. Pet daycares, pet hotels, and even pet spas have begun to pop up with regularity.

18.     More and more, Americans regard their pets as members of their family and Americans are heartbroken at the prospect of accidentally losing a pet.

19.     Losing a pet is startlingly common. An estimated one in three pets become lost at some point in their lives.[1]

20.     Microchips are used to reunite lost pets with their owners. A microchip is a radio-frequency identification transponder that carries a unique identification number. When the microchip is scanned by a vet or shelter, it transmits an ID number. The ID number is then linked to the owner's contact information in a pet recovery database, allowing a pet to be reunited with an owner.

---

[1] https://www.akc.org/expert-advice/lifestyle/how-do-dog-microchips-work/

21.     According to the American Kennel Club, pets with microchips are up to 20 times more likely to be reunited with their owners than pets without microchips.

22.     Although pet microchipping has been around since the 1980s, in recent years, microchipping has exploded in popularity and today it is estimated that 3.5 million pets have received microchip implants.[2]

23.     At least part of the reason for the rise in popularity in microchips is their ease.  The microchip itself is roughly the size of a grain of rice and is typically injected under the skin between a dog or cat's shoulder blade.  The invasiveness of the procedure is often compared to giving a dog a vaccine.

24.     Microchips are also inexpensive. According to petfinder.com, the average cost to have a microchip implanted by a veterinarian is $45—a one–time fee that often includes registration in a pet recovery database.[3]

**B.     Home Again's Microchips**

25.     Home Again is a leading provider of pet microchips. In addition to offering the microchip itself, Home Again offers a popular pet recovery database.

26.     The Home Again microchip and pet recovery database work independently from one another. In other words, a pet owner whose pet has an off-brand microchip may still register with the Home Again pet recovery database, and a pet owner whose pet has a Home Again microchip may still register with a different database.

---

[2] https://www.peta.org/living/animal-companions/microchip/

[3] https://www.petfinder.com/dogs/lost-and-found-dogs/microchip-faqs/#:~:text=The%20average%20cost%20to%20have,may%20already%20have%20a%20microchip.

27.     As a practical matter, however, most people with Home Again microchips register with the Home Again pet recovery database. That is because registration with most pet recovery databases require a fee, and the cost of the Home Again database registration fee is typically bundled in with the cost of the microchip. Additionally, after a pet receives a Home Again microchip, their owner is handed paperwork which allows the pet owner to enroll in the Home Again database. Thus, most pet owners whose pet receive a Home Again microchip end up signing up for the Home Again pet recovery database.

28.     In addition to bundling the enrollment in the database with the price of the microchip, Home Again also offers those who purchase a Home Again microchip 12 months of free Home Again "membership."

29.     The Home Again membership is designed to lure consumers into paying an annual fee under the guise that such a fee is necessary to stay in the Home Again pet recovery database.

30.     Over and over again, Home Again links its "membership" (which requires an annual fee) with its database (which is free for life). Consumers pay the annual membership fee believing they must do so in order to keep their contact information up-to-date in the Home Again database.

31.     In reality, however, the annual membership offers useless services that no reasonable consumer would pay for.  Specifically, the membership provides consumers with lost pet alerts, an emergency medical hotline, and travel assistance for lost pets who are found more than 500 miles away from their home. Because it is highly unlikely that a pet owner would ever use any of these services (and may be able to get many of these same services elsewhere for free), the membership provides no real benefit to consumers.

32.     Most importantly, the membership services are not the reason that consumers pay the annual fee. By and large, consumers pay the annual fee because they believe they must do so to keep their microchip working. If consumers knew the truth about what the membership fee was for, they would not pay the annual fee.

**C.      Home Again's Misrepresentations and Omissions**

33.     In numerous marketing materials, Home Again consistently conflates its annual "membership" with its pet recovery "database," when in fact, the two have nothing to do with each other. Home Again intentionally obscures the difference between "*enrollment*" in the Home Again annual membership with "*registration*" in the Home Again database. In reality, a consumer can "register'—and stay registered—in the Home Again database without paying to for a Home Again membership.

34.     Indicative of the fraud is Home Again's clever answer to the question, "What is Home Again" on its FAQ page, Home Again states:

> HomeAgain is an advanced lost pet recovery service dedicated to the safety and well being of your pet. Our system is best utilized when a microchip with a unique ID number is injected between the shoulder blades of your pet. This can be done by a veterinarian if your pet is not already microchipped. ***Once your pet is microchipped the next step is to enroll your pet's microchip ID. Enrollment adds a description and photo, along with your contact information, in the*** HomeAgain National Pet Recovery Database. ***This information is critical to reuniting you immediately with your lost pet once he is found.***
> ***Once enrolled, your pet is entitled to all the additional benefits of the HomeAgain annual membership, including:***
>
> - **Updates to your pet or contact information online or by phone**
> - **24/7 access to our lost pet hotline**
> - **Rapid Lost Pet Alerts and Lost Pet Posters**
> - **24/7 access to the Emergency Medical Hotline**
> - **Travel Assistance for Found Pets**
> - **and more**

35.     Thus, Home Again intentionally provides the misimpression that enrollment in the database is linked to, and part of, enrollment in the annual membership. For that reason, consumers reasonably believe that allowing the membership to lapse will also lead to the lapse of the listing in the database—a falsehood Home Again perpetuates at every turn.

36.     Home Again's deception starts at the veterinarian's office. Specifically, after receiving the Home Again microchip, Home Again provides pet owners with paperwork which prominently represents that "Home Again membership services are $19.99 per year"[4] and provides a space for consumers to provide their credit card information. The paperwork instructs consumers "Please return this form to the Home Again Pet Recovery Service or we will not be able to identify your pet if lost."

37.     But these representations are not true. A consumer does not need to provide their credit card information or pay the annual fee for "membership services" "to identify your pet if lost." In fact, registration in the database is typically included in the cost of the microchip, and maintenance in the database is free.

38.     Nowhere on this form does Home Again explain the difference between registration in its database and enrollment in its membership program. Home Again does not clarify anywhere on the form that the membership program provides separate "services" other than the listing in the pet recovery database.

39.     But the deception does not end there. That's because Home Again provides its membership for free for the first 12 months after enrollment in its database. This tactic is intentional and further increases consumer confusion. When consumers receive 12 months of free

---

[4] The membership fee varies between $19.99 and $21.99 per year.

"membership," they reasonably believe that they are receiving 12 months of access to the Home Again pet recovery database.

40.     After 12 months, if a consumer did not initially provide their credit card information on their enrollment form, Home Again emails consumers to remind them to renew their membership. Again, these renewal emails mislead consumers into believing they must renew, and pay the annual fee, in order to stay in the database.

41.     Moreover, Home Again's website contains many of the same misrepresentations and omissions found in Home Again's pamphlets and e-mails. Over and over, Home Again links "enrollment" and "membership" with "registration" and the database.

42.     The deception starts on Home Again's homepage. Prominent on the Home Again home page is the following prompt:



49.     This by itself is deceptive because "enroll now" and "renew membership" are two entirely different things. Specifically, the "enroll now" button provides a link for consumers to register in the database. The renew membership button, however, provides a link to renew Home Again's valueless membership services, which have nothing to do with the database.

50.     Moreover, the "Check Your Status" to confirm your pet is registered with Home Again link is also deceptive. That hyperlink leads consumers to the following link:



51.     If a consumer checks whether their pet is "registered," but their membership has lapsed, they will receive the following message:

52.     This is another lie. Nowhere on this page does Home Again inform the owner that their pet is <u>still</u> "registered" in the Home Again database and will stay in the Home Again database irrespective of their decision to "renew" their "full service annual membership." To the contrary, Home Again leads consumers to believe their pet is ***not*** "enrolled" or "registered" in the database because their membership is expired and they have chosen not to pay the annual fee.

53.     The deception does not end there. Elsewhere on its website, Home Again urges consumers to become a Home Again member to "manage your account and update your contact information."



54.     Again, this is misleading: a pet owner does *not* need to become a member or pay the annual fee to "manage your account and update your contact information." This can be done for free, without being a Home Again member.

55.     These misrepresentations are littered everywhere on the Home Again website. Indeed, in its FAQ, Home Again asks the question "My pet is already microchipped, but how do I

know if he is enrolled?" The answer is: "Look up your pet's HomeAgain membership status. You'll be asked to enter your pet's microchip ID." If a consumer follows the prompt, they are directed to a page which allows them to "confirm their pet is registered with HomeAgain." If a consumer enters the microchip ID number, and their owner has not paid the membership fee, they will be told: "This pet's full service annual membership has expired. Please log in or call Customer Service at 1-888-HomeAgain (1-888-466-3242) to renew." *See supra*.

56.     Nowhere in its FAQs does Home Again explain the difference between its membership and the enrollment in its pet recovery database, and nowhere on its consumer-facing site does Home Again clearly explain that a consumer does not need to pay the annual membership fee to stay in the Home Again database and keep their contact information up-to-date.

### D.     Numerous Online Complaints Confirm Home Again's Deception

57.     Home Again's deception is widely discussed online. So common is the consumer confusion, in fact, that several veterinary offices have taken it upon themselves to post warnings to their customers. These vets want to warn consumers that they do *not* need to buy the Home Again membership, despite Home Again's representations to the contrary.

58.     For example, the Girard Veterinary Clinic in Philadelphia, Pennsylvania has on its website the following warning:

> **Recently we have been made aware that clients have received notices from homeagain that they must renew their membership for an annual fee. Please know that you never HAVE to renew your membership!**
>
> **[ . . . ]**
>
> **We are sending out this public announcement to make sure that people aware of the somewhat misleading mail/e-mail they receive. (view a copy of it here) We want to make sure that everyone knows you do NOT need to renew this membership if you do not want to. Your pet's microchip number and your contact information will ALWAYS remain in the pet database and you can**

**ALWAYS update your contact information whether or not you use this premium service.**[5]

59.     Likewise, the Bellevue Animal Hospital in Omaha, Nebraska warns its customers: "A common misconception among pet owners is that you must renew your pet's registration annually, at the cost of $19.99, in order to keep your pet's microchip number, description, your name, and your contact details in the HomeAgain database. This is not the case! Your pet's information and your contact information stays in the HomeAgain database for life."[6]

60.     The following consumer complaints are just a sampling from the numerous complaints online:[7]

- *Like others, I knew nothing about microchip services when I got my two Great Danes chipped by this company. Microchipping is good, right? So just pay the fee at the vet, they'll take care of it, and everything will be fine. Yeah, right! I took my Danes in and got them chipped at the same time by my vet for $30 each. My get assured me that was the only charge I would have to pay. But it was not.*

  *One year later, I was moving to a new house. I went to the Home Again website to change my address and they would not let me change it without paying more money! I called them and a rude representative informed me that I could either pay $20/each dog ANNUALLY for the ability to change their info, or a lifetime "membership" of $40 each dog.*

- *Home Again tries to upsell services by sending a misleading alert after you HAVE to pay the mandatory $20.00 fee for the first year, that your coverage has expired. It leads people to believe that the service for finding a pet has expired.*

- *Seriously? $19.99 per Year for this damn inconvenient microchip . . . We took our cat to Banfield and they never mentioned the damn microchip they were putting in required an annual fee of $20.*

- *We get home from our appointment and I attempted to register our microchip online and after entering pages of info, I'm told there is a $19.99 annual fee to*

---

[5] https://www.girardvetclinic.com/single-post/2019/02/13/homeagain-microchip-membership-information

[6]     https://bellevueanimalhospital.com/faqs-do-i-need-to-renew-my-homeagain-membership-every-year/

[7] These complaints are excerpted from Yelp, where Home Again has 1.5 stars out of 5. See https://www.yelp.com/biz/homeagain-readington?q=%2419.99

*have this microchip registered with them. I've never heard of anything like that and if I knew about the additional annual fees ahead of time, I would have held off on microchipping her since an unregistered microchip is essentially useless.*

**E.      Home Again's Arbitration Provision is Unenforceable**

61.      The fine print of the Home Again enrollment form purports to contain a binding arbitration provision. The arbitration provision is small, unnoticeable, and unconscionable to the extent it is foisted on consumers with consent.

62.      Indeed, consumers do not provide affirmative consent to the arbitration provision.

63.      Importantly, a consumer is only provided with Home Again's enrollment paperwork, which purport to contain the arbitration provision, *after* their pet has already received a Home Again microchip.

64.      But once a pet receives the Home Again microchip, it is too late. At that point, the consumer is stuck with Home Again's enrollment form—which they may not, at that point, reject. Moreover, unlike many other arbitration provisions, the Home Again arbitration provision does not contain any sort of opt out. Thus, if a consumer did not want to consent to Home Again's arbitration provision, they would need their pet to undergo surgery to remove the microchip. That is not assent. Because consumers are never provided any actual choice with respect to whether they agree to Home Again's terms, the arbitration provision is unenforceable.

**F.      Plaintiff's Experience**

65.      Plaintiff adopted her dog, Schmooley, in 2018. Schmooley was a street rescue and received a Home Again microchip prior to being adopted by Plaintiff.

66.      After adopting her pet, Plaintiff updated Schmooley's owner contact info in the Home Again database. Plaintiff chose to renew Schmooley's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the Home Again database. Specifically, Plaintiff relied on Home Again's misleading website and marketing materials in deciding to renew the membership.

67.     Plaintiff did not realize she did not need to renew her membership to stay enrolled in the Home Again database until after consulting with attorneys.

68.     Had Plaintiff known she did not need to pay the Home Again membership fee to stay in the Home Again database, she would not have paid it.

## CLASS ACTION ALLEGATIONS

69.     This action is brought by Plaintiff individually and on behalf of classes pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**The National Class is defined as follows:**

All persons who, within the applicable statute of limitations, paid a membership fee to Home Again.

**The California Subclass is defined as follows:**

All persons in the state of California who, within the applicable statute of limitations, paid a membership fee to Home Again.

70.     Excluded from the Classes are Home Again, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

71.     *Numerosity.* The Classes consists of hundreds or thousands of consumers and is thus so numerous that joinder of all members is impracticable.

72.     *Ascertainability.* The identities and addresses of all members of the Classes can be readily ascertained from Home Again's business records.

73.     *Typicality.* The claims asserted by Plaintiff are typical of the claims of members of the Classes inasmuch as Plaintiff and Class members were deceived by Home Again in the same manner.

74.     *Adequacy.* Plaintiff will fairly and adequately protect the interests of the members of the Classes and do not have any interests antagonistic to those of the other members of the

Classes. In addition, Plaintiff has retained attorneys who are knowledgeable and experienced in class and complex litigation.

75.     ***Commonality and Predominance.*** Common questions of law and fact affecting members of the Classes predominate over any individualized issues. These predominating common questions include the following:

      a.     Whether Home Again misrepresented and/or omitted material facts to consumers;

      b.     Whether Plaintiff and members of the Classes sustained damages as a result of Home Again's conduct; and

      c.     Whether Plaintiff and members of the Classes are entitled to damages, restitution, and/or other relief as a remedy for Home Again's conduct.

76.     ***Superiority.*** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

      a.     The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

      b.     This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

c.      Without a class action, many class members would continue to suffer injury, and Defendant's violations of law will continue without redress while it continues to reap and retain the substantial proceeds of their wrongful conduct.

77.    ***Manageability.*** This action does not present any undue difficulties that would impede its management by the Court as a class action.

**FIRST CLAIM FOR RELIEF**
**Violation of New Jersey's Consumer Fraud Act**
**N.J.S.A. 56:8-1 *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class)**

78.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

79.    This claim is brought on behalf of Plaintiff and the nationwide class.

80.    New Jersey law applies to the nationwide class. New Jersey has a significant interest in regulating conduct within its borders. New Jersey has a greater interest in the Plaintiff's claims than any other state and is most intimately concerned with the claims and outcomes of this litigation.

81.    The principal place of business of Defendant is in New Jersey and is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities.

82.    Defendant's corporate decisions with regard to its marketing representations were likely made from New Jersey and its tortious conduct emanated from this state.

83.    Application of New Jersey law is neither arbitrary or unfair because New Jersey has a significant interest in these claims and because Defendant included a New Jersey choice of law provision in its enrollment form.

84.     The Consumer Fraud Act was enacted by the New Jersey legislature to protect consumers from unfair, unconscionable and deceptive business practices.

85.     Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff and the Class members.

86.     Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff and other class members into signing up for its memberships based on these misrepresentations and omissions.

87.     Had Plaintiff known membership was not required to stay in the Home Again database, she would not have paid for it.

88.     These violations have directly, foreseeably, and proximately caused damages to Plaintiff and the Class in an amount yet to be determined.

89.     Accordingly, Plaintiff and Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

### SECOND CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*
**(Asserted On Behalf of the California Class)**

90.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

91.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Home Again's conduct related to deceptively representing that it provides access to its database for an annual fee violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

92.     The UCL imposes strict liability. Plaintiff needs not prove that Home Again intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

93.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

94.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

95.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

96.     Home Again committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting to consumers that they are required to pay an annual fee when in fact, a one-time fee was only required to be enrolled in Home Again's database.

97.     Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

98.     The harm to Plaintiff and the California Class outweighs the utility of Defendant's

practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

99.     Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiff's Third Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that Home Again deceptively represents that consumers must pay an annual fee so that their pet's microchip remains in Home Again's database; in reality, however, this marketing message is false because Home Again's (a) use of the database service causes consumers to pay for an annual membership when there is no need to.

100.    Home Again's business practices have misled Plaintiff and the proposed California Class and will continue to mislead them in the future.

101.    Plaintiff relied on Defendant's false representations that the annual membership provides pet owners pet locating services when, fact, the annual fee provides pet owners with useless services that no reasonable consumer would pay for if they realized what they were actually buying. Specifically, the membership provides pet owners with lost pet alerts, an emergency medical hotline, and travel assistance for lost pets who are found more than 500 miles away from their home. These services provide little practical value and are not the reason that consumers continue to pay the annual fee.

102.    By falsely marketing the pet locator service as an annual fee, Home Again deceived Plaintiff and California Class members into renewing and purchasing the annual membership they otherwise would not make.

103.    Had Plaintiff known the truth of the pet locator membership service fee, *i.e.,* that Home Again's "Annual Membership Fee" was useless and that once their pet's microchip was in

the Home Again database, it was in for life, they would have never chosen to pay an annual fee or chosen a different microchip locator service.

104.    As a direct and proximate result of Home Again's unfair, fraudulent, and unlawful practices, Plaintiff and California Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into renewing and purchasing the annual membership under the false belief that Home Again's true microchip database fee was prominently represented as an annual fee.

105.    As a result of its unfair, fraudulent, and unlawful conduct, Home Again has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and California Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

106.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the California Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(Asserted On Behalf of the California Class)**

106.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

107.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.  Plaintiff and each member of the proposed California Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of pet locator products to consumers were "transactions" within the meaning of California Civil

Code § 1761(e). Defendant's pet locator service utilized by Plaintiff and the California Class is a "service" within the meaning of California Civil Code § 1761(b). The microchips purchased by Plaintiff and the California Class are "goods" within the meaning of California Civil Code § 1761(a).

108.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the California Class which were intended to result in, and did result in, the sale of Home Again pet microchips:

a.    "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5); and

b.    "Advertising goods or services with intent not to sell them as advertised" (a)(9).

109.    Specifically, Home Again advertises to customers that the charge for use of its microchip pet locator service represented by the annual fee disclosed, but this is false because Defendant's annual fee is not necessary to keep the database updated.

110.    At no time does Home Again disclose the true nature of its annual fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

111.    Home Again continues to violate the CLRA and continues to injure the public by misleading consumers about its microchip pet locator annual fees. Accordingly, Plaintiff seeks injunctive relief on behalf of the general public to prevent Home Again from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the California Class members, and members of the general public may be irreparably harmed and/or denied effective and complete

remedy if such an order is not granted.

112.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the California Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

113.    Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**False and Misleading Advertising**
**Business & Professions Code §§ 17500,** *et seq.*
**(Asserted On Behalf of the California Class)**

114.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

115.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with  intent … to dispose  of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of

reasonable care should be known, to be untrue or misleading...."

116.    Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

117.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

118.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the California Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting their membership fees.

119.    Further, Plaintiff and the members of the California Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

120.    Additionally, Plaintiff and the California Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**<u>FIFTH CLAIM FOR RELIEF</u>**
**Unjust Enrichment**
**(Asserted on behalf of the Classes)**

121.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

122.    To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

123.    Plaintiff and the Classes conferred a benefit on Defendant when they paid Defendant the membership fee, which they were tricked into doing based on the belief that it was required to stay in the Home Again database.

124.    Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

125.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

126.    Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for judgment as follows:

A.      Certifying this action for class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding Plaintiff and the Classes compensatory, consequential, statutory, treble, and punitive damages in an amount to be proven at trial;

C.      Awarding Plaintiff and the Classes pre-judgment and post-judgment interest, as well as attorneys' fees and costs, at the maximum rate allowed by law;

D.      Issuing declaratory and injunctive relief to prevent Home Again's ongoing deceptive conduct as asserted herein; and

E.      Awarding Plaintiff and the Classes such other relief as this Court may deem just and proper under the circumstances.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: May 19, 2022                    */s/ Rachel Edelsberg*
                                       Rachel Edelsberg
                                       **DAPEER LAW, P.A.**
                                       New Jersey Bar No. 039272011
                                       3331 Sunset Avenue
                                       Ocean, New Jersey 07712
                                       Telephone: 305-610-5223
                                       rachel@dapeer.com

                                       Andrew J. Shamis (*pro hac vice* to be filed)
                                       **SHAMIS & GENTILE, P.A.**
                                       14 NE 1st Avenue, Suite 400
                                       Miami, Florida 33132
                                       Telephone: (305) 479-2299
                                       ashamis@shamisgentile.com

                                       Jeffrey D. Kaliel (*pro hac vice* to be filed)
                                       Sophia G. Gold (*pro hac vice* to be filed)
                                       **KALIELGOLD PLLC**
                                       jkaliel@kalielpllc.com
                                       sgold@kalielgold.com
                                       1100 15th Street NW, 4th Floor
                                       Washington, D.C. 20005
                                       Telephone: (202) 350-4783

                                       Scott Edelsberg (*pro hac vice* to be filed)
                                       **EDELSBERG LAW, PA**
                                       20900 NE 30th Ave, Suite 417
                                       Aventura, FL 33180
                                       Telephone: (305) 975-3320
                                       scott@edelsberglaw.com

                                       *Counsel for Plaintiff and*
                                       *the Proposed Class*