# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHY GOODMAN, MATTHEW INMAN, DENNIS CANETTY, BELINDA YOUNG, and ELLEN BERRIS, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>INTERVET, INC. d/b/a MERCK ANIMAL HEALTH d/b/a HOME AGAIN,<br><br>            Defendant. | **Case No. 2:22-cv-02926-WJM-ESK**<br><br>AMENDED CLASS ACTION COMPLAINT<br><br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiffs Cathy Goodman, Matthew Inman, Dennis Canetty, Belinda Young, and Ellen Berris (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Complaint against Defendant Intervet, Inc., d/b/a Merck Animal Health d/b/a Home Again ("Home Again" or "Defendant"), and state as follows:

## NATURE OF THE ACTION

1.     This is a class action brought on behalf of Plaintiffs and similarly situated pet owners who were deceived into purchasing annual Home Again memberships after their pets received Home Again microchips based on Home Again's misrepresentations and omissions that such memberships are required in order to stay registered in the Home Again database.

2.     In recent years, an increasing number of pet owners have elected to have their pets microchipped for the peace of mind that in the unlikely event their pet is lost, a microchip may allow their pet to return home safely.

3.      Home Again, a subsidiary of Merck, is a multi-billion-dollar company that profits handsomely from the sale of its microchips. This case does not concern the microchips themselves, but instead concerns Home Again's deceptive marketing of its membership program, which it tricks consumers into purchasing based on the mistaken belief that such memberships are necessary to maintain pet owners' contact information in the Home Again database.

4.      Here's how it works. Immediately after a pet receives a Home Again microchip, the pet's owner is provided paperwork from Home Again which allows the pet owner to enroll in the Home Again database.

5.      The database is what allows the microchip to function. If a pet is lost and the pet's microchip is scanned, the Home Again database maintains and provides the contact information for the pet's owner. The database, in other words, is the entire reason why consumers purchase microchips: the database enables reunions between owners and their lost pets.

6.      But what consumers do not realize—and Home Again intentionally obscures—is that after the initial registration, the owner's contact information remains in the Home Again database, for free, forever. Likewise, the owner's contact information can always be updated, for free, forever. In other words, consumers do not need to purchase a Home Again annual membership to keep or update their contact information in Home Again's database; it will remain in the database regardless of a consumer's membership status and the contact information can always be updated, free of charge.

7.      But Home Again profits from keeping that secret. That is why in marketing materials, Home Again consistently links its annual "membership" with its "database"—even though the two have nothing to do with each other. In other words, Home Again intentionally leads

consumers to believe that payment of its membership fee is required to stay within the Home Again database, when it is not.

8.    In fact, Home Again's annual membership provides pet owners with useless services that no reasonable consumer would pay for if they realized what they were actually buying. Specifically, the membership provides pet owners with lost pet alerts, an emergency medical hotline, and travel assistance for lost pets who are found more than 500 miles away from their home. These services provide little practical value and are not the reason that consumers continue to pay the annual fee.

9.    Home Again's misrepresentations and omissions are misleading. If consumers knew they were not required to pay the annual fee to maintain their information in the Home Again database, they would not pay for the membership.

10.    Plaintiffs and other consumers have been damaged by Home Again's misleading and deceptive conduct. Plaintiffs bring this action on behalf of themselves, the putative Classes, and the general public. Plaintiffs seek actual damages, statutory damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Home Again from continuing to engage in its illegal practices described herein.

**PARTIES**

11.    Plaintiff Cathy Goodman is a citizen and resident of Los Angeles, California. Plaintiff Goodman enrolled in Home Again's membership for her dog, Schmooley, in 2018.

12.    Plaintiff Matthew Inman is a recent citizen and resident of Zanesville, Ohio. A substantial portion of relevant events giving rise to this action occurred while Plaintiff Inman was a citizen and resident of Orangevale, California. Plaintiff Inman enrolled in Home Again's membership for his cats, Thelma and Louise, in 2014.

13.     Plaintiff Dennis Canetty is a citizen and resident of Staten Island, New York. Plaintiff Canetty enrolled in Home Again's membership for his cat, Monkey, in 2017.

14.     Plaintiff Belinda Young is a citizen and resident of Randallstown, Maryland. Plaintiff Young enrolled in Home Again's membership for her dogs, Maxi, Geiger, and Fargo, in 2013, 2012, and 2015, respectively.

15.     Plaintiff Ellen Berris is a citizen and resident of Boynton Beach, Florida. Plaintiff Berris enrolled in Home Again's membership for her dogs, Airbus and Learjet, in 2010 and 2016.

16.     Defendant maintains its principal place of business in Madison, New Jersey and is incorporated in Delaware.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiffs) and one Defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant is based here and therefore a substantial portion of the events giving rise to Plaintiffs' causes of action occurred in this District.

19.     This Court has personal jurisdiction over Defendant because the Defendant's headquarters are located in this State.

## FACTUAL ALLEGATIONS

**A.     Background: Pet Microchipping is a Popular Way to Minimize the Chance of Losing A Pet**

20.     An astounding 67% of American households, or 85 million families, own a pet.

21.    The pet industry—once limited to Milkbones and kibble—has exploded in popularity with several corporations beginning in recent years to market and sell pet-oriented products and services. Pet daycares, pet hotels, and even pet spas have begun to pop up with regularity.

22.    More and more, Americans regard their pets as members of their family and Americans are heartbroken at the prospect of accidentally losing a pet.

23.    Losing a pet is startingly common. An estimated one in three pets become lost at some point in their lives.[1]

24.    Microchips are used to reunite lost pets with their owners. A microchip is a radio-frequency identification transponder that carries a unique identification number. When the microchip is scanned by a vet or shelter, it transmits an ID number. The ID number is then linked to the owner's contact information in a pet recovery database, allowing a pet to be reunited with an owner.

25.    According to the American Kennel Club, pets with microchips are up to 20 times more likely to be reunited with their owners than pets without microchips.

26.    Although pet microchipping has been around since the 1980s, in recent years, microchipping has exploded in popularity and today it is estimated that 3.5 million pets have received microchip implants.[2]

27.    At least part of the reason for the rise in popularity in microchips is their ease.  The microchip itself is roughly the size of a grain of rice and is typically injected under the skin between

---

[1] https://www.akc.org/expert-advice/lifestyle/how-do-dog-microchips-work/

[2] https://www.peta.org/living/animal-companions/microchip/

a dog or cat's shoulder blade.  The invasiveness of the procedure is often compared to giving a dog a vaccine.

28.     Microchips are also inexpensive. According to petfinder.com, the average cost to have a microchip implanted by a veterinarian is $45—a one–time fee that often includes registration in a pet recovery database.[3]

**B.     Home Again's Microchips**

29.     Home Again is a leading provider of pet microchips. In addition to offering the microchip itself, Home Again offers a popular pet recovery database.

30.     The Home Again microchip and pet recovery database work independently from one another. In other words, a pet owner whose pet has an off-brand microchip may still register with the Home Again pet recovery database, and a pet owner whose pet has a Home Again microchip may still register with a different database.

31.     As a practical matter, however, most people with Home Again microchips register with the Home Again pet recovery database. That is because registration with most pet recovery databases require a fee, and the cost of the Home Again database registration fee is typically bundled in with the cost of the microchip. Additionally, after a pet receives a Home Again microchip, their owner is handed paperwork which allows the pet owner to enroll in the Home Again database. Thus, most pet owners whose pet receive a Home Again microchip end up signing up for the Home Again pet recovery database.

---

[3] https://www.petfinder.com/dogs/lost-and-found-dogs/microchip-faqs/#:~:text=The%20average%20cost%20to%20have,may%20already%20have%20a%20microchip.

32.     In addition to bundling the enrollment in the database with the price of the microchip, Home Again also offers those who purchase a Home Again microchip 12 months of free Home Again "membership."

33.     The Home Again membership is designed to lure consumers into paying an annual fee under the guise that such a fee is necessary to stay in the Home Again pet recovery database.

34.     Over and over again, Home Again links its "membership" (which requires an annual fee) with its database (which is free for life). Consumers pay the annual membership fee believing they must do so in order to keep their contact information up-to-date in the Home Again database.

35.     In reality, however, the annual membership offers useless services that no reasonable consumer would pay for. Specifically, the membership provides consumers with lost pet alerts, an emergency medical hotline, and travel assistance for lost pets who are found more than 500 miles away from their home. Because it is highly unlikely that a pet owner would ever use any of these services (and may be able to get many of these same services elsewhere for free), the membership provides no real benefit to consumers.

36.     Most importantly, the membership services are not the reason that consumers pay the annual fee. By and large, consumers pay the annual fee because they believe they must do so to keep their microchip working. If consumers knew the truth about what the membership fee was for, they would not pay the annual fee.

**C.      Home Again's Misrepresentations and Omissions**

37.     In numerous marketing materials, Home Again consistently conflates its annual "membership" with its pet recovery "database," when in fact, the two have nothing to do with each other. Home Again intentionally obscures the difference between "*enrollment*" in the Home Again

annual membership with "*registration*" in the Home Again database. In reality, a consumer can "register'—and stay registered—in the Home Again database without paying to for a Home Again membership.

38.     Indicative of the fraud is Home Again's clever answer to the question, "What is Home Again" on its FAQ page, Home Again states:

> HomeAgain is an advanced lost pet recovery service dedicated to the safety and well being of your pet. Our system is best utilized when a microchip with a unique ID number is injected between the shoulder blades of your pet. This can be done by a veterinarian if your pet is not already microchipped. ***Once your pet is microchipped the next step is to enroll your pet's microchip ID. Enrollment adds a description and photo, along with your contact information, in the*** [***HomeAgain National Pet Recovery Database***](#)***. This information is critical to reuniting you immediately with your lost pet once he is found.***
> ***Once enrolled, your pet is entitled to all the additional benefits of the HomeAgain annual membership, including:***
>
> - **Updates to your pet or contact information online or by phone**
> - **24/7 access to our [lost pet hotline](#)**
> - **[Rapid Lost Pet Alerts](#) and Lost Pet Posters**
> - **24/7 access to the [Emergency Medical Hotline](#)**
> - **[Travel Assistance for Found Pets](#)**
> - **and more**

39.     Thus, Home Again intentionally provides the misimpression that enrollment in the database is linked to, and part of, enrollment in the annual membership. For that reason, consumers reasonably believe that allowing the membership to lapse will also lead to the lapse of the listing in the database—a falsehood Home Again perpetuates at every turn.

40.     Home Again's deception starts at the veterinarian's office. Specifically, after receiving the Home Again microchip, Home Again provides pet owners with paperwork which prominently represents that "Home Again membership services are $19.99 per year"[4] and provides

---

[4] Depending on the date of enrollment, the membership fee varies between $17.99 and $21.99 per year.

a space for consumers to provide their credit card information. The paperwork instructs consumers "Please return this form to the Home Again Pet Recovery Service or we will not be able to identify your pet if lost."

41.     But these representations are not true. A consumer does not need to provide their credit card information or pay the annual fee for "membership services" "to identify your pet if lost." In fact, registration in the database is typically included in the cost of the microchip, and maintenance in the database is free.

42.     Nowhere on this form does Home Again explain the difference between registration in its database and enrollment in its membership program. Home Again does not clarify anywhere on the form that the membership program provides separate "services" other than the listing in the pet recovery database.

43.     But the deception does not end there. That's because Home Again provides its membership for free for the first 12 months after enrollment in its database. This tactic is intentional and further increases consumer confusion. When consumers receive 12 months of free "membership," they reasonably believe that they are receiving 12 months of access to the Home Again pet recovery database.

44.     After 12 months, if a consumer did not initially provide their credit card information on their enrollment form, Home Again emails consumers to remind them to renew their membership. Again, these renewal emails mislead consumers into believing they must renew, and pay the annual fee, in order to stay in the database.

45.     Moreover, Home Again's website contains many of the same misrepresentations and omissions found in Home Again's pamphlets and e-mails. Over and over, Home Again links "enrollment" and "membership" with "registration" and the database.

46.    The decep[...]t on the Home Again home page is the followin[...]



49.    This by itself is deceptive because "enroll now" and "renew membership" are two entirely different things. Specifically, the "enroll now" button provides a link for consumers to register in the database. The renew membership button, however, provides a link to renew Home Again's valueless membership services, which have nothing to do with the database.

50.    Moreover, the "Check Your Status" to confirm your pet is registered with Home Again link is also deceptive. That hyperlink leads consumers to the following link:



51.     If a consumer checks whether their pet is "registered," but their membership has lapsed, they will receive the following message:

# Important Message

This pet's full service annual membership has expired. Please log in or call Customer Service at 1-888-HomeAgain (1-888-466-3242) to renew.

**Login to Online Account**

52.     This is another lie. Nowhere on this page does Home Again inform the owner that their pet is <u>still</u> "registered" in the Home Again database and will stay in the Home Again database irrespective of their decision to "renew" their "full service annual membership." To the contrary, Home Again leads consumers to believe their pet is ***not*** "enrolled" or "registered" in the database because their membership is expired and they have chosen not to pay the annual fee.

53.     The deception does not end there. Elsewhere on its website, Home Again urges consumers to become a Home Again member to "manage your account and update your contact information."

Member Login

## Welcome HomeAgain Member!

As a member, you can use <u>HomeAgain.com</u> to:

• Manage your account and update your contact information.

• Upload a recent picture of your pet and update your pet's profile.

• Purchase collar tags for your pet.

• Join PetRescuers and receive lost pet alerts when a pet is lost in your neighborhood so you can be on the look out.

54.     Again, this is misleading: a pet owner does *not* need to become a member or pay the annual fee to "manage your account and update your contact information." This can be done for free, without being a Home Again member.

55.     These misrepresentations are littered everywhere on the Home Again website. Indeed, in its FAQ, Home Again asks the question "My pet is already microchipped, but how do I know if he is enrolled?" The answer is: "Look up your pet's HomeAgain membership status. You'll be asked to enter your pet's microchip ID." If a consumer follows the prompt, they are directed to a page which allows them to "confirm their pet is registered with HomeAgain." If a consumer enters the microchip ID number, and their owner has not paid the membership fee, they will be told: "This pet's full service annual membership has expired. Please log in or call Customer Service at 1-888-HomeAgain (1-888-466-3242) to renew." *See supra*.

56.     Nowhere in its FAQs does Home Again explain the difference between its membership and the enrollment in its pet recovery database, and nowhere on its consumer-facing site does Home Again clearly explain that a consumer does not need to pay the annual membership fee to stay in the Home Again database and keep their contact information up-to-date.

**D.     Numerous Online Complaints Confirm Home Again's Deception**

57.     Home Again's deception is widely discussed online. So common is the consumer confusion, in fact, that several veterinary offices have taken it upon themselves to post warnings to their customers. These vets want to warn consumers that they do *not* need to buy the Home Again membership, despite Home Again's representations to the contrary.

58.     For example, the Girard Veterinary Clinic in Philadelphia, Pennsylvania has on its website the following warning:

**Recently we have been made aware that clients have received notices from homeagain that they must renew their membership for an annual fee. Please know that you never HAVE to renew your membership!**

[ . . . ]

**We are sending out this public announcement to make sure that people aware of the somewhat misleading mail/e-mail they receive. (view a copy of it here) We want to make sure that everyone knows you do NOT need to renew this membership if you do not want to. Your pet's microchip number and your contact information will ALWAYS remain in the pet database and you can ALWAYS update your contact information whether or not you use this premium service.**[5]

59.    Likewise, the Bellevue Animal Hospital in Omaha, Nebraska warns its customers: "A common misconception among pet owners is that you must renew your pet's registration annually, at the cost of $19.99, in order to keep your pet's microchip number, description, your name, and your contact details in the HomeAgain database. This is not the case! Your pet's information and your contact information stays in the HomeAgain database for life."[6]

60.    The following consumer complaints are just a sampling from the numerous complaints online:[7]

- *Like others, I knew nothing about microchip services when I got my two Great Danes chipped by this company. Microchipping is good, right? So just pay the fee at the vet, they'll take care of it, and everything will be fine. Yeah, right! I took my Danes in and got them chipped at the same time by my vet for $30 each. My get assured me that was the only charge I would have to pay. But it was not.*

  *One year later, I was moving to a new house. I went to the Home Again website to change my address and they would not let me change it without paying more money! I called them and a rude representative informed me that I could either pay $20/each dog ANNUALLY for the ability to change their info, or a lifetime "membership" of $40 each dog.*

---

[5] https://www.girardvetclinic.com/single-post/2019/02/13/homeagain-microchip-membership-information

[6]    https://bellevueanimalhospital.com/faqs-do-i-need-to-renew-my-homeagain-membership-every-year/

[7] These complaints are excerpted from Yelp, where Home Again has 1.5 stars out of 5. See https://www.yelp.com/biz/homeagain-readington?q=%2419.99

- *Home Again tries to upsell services by sending a misleading alert after you HAVE to pay the mandatory $20.00 fee for the first year, that your coverage has expired. It leads people to believe that the service for finding a pet has expired.*

- *Seriously? $19.99 per Year for this damn inconvenient microchip . . . We took our cat to Banfield and they never mentioned the damn microchip they were putting in required an annual fee of $20.*

- *We get home from our appointment and I attempted to register our microchip online and after entering pages of info, I'm told there is a $19.99 annual fee to have this microchip registered with them. I've never heard of anything like that and if I knew about the additional annual fees ahead of time, I would have held off on microchipping her since an unregistered microchip is essentially useless.*

**E.    Home Again's Arbitration Provision is Unenforceable**

61.    The fine print of the Home Again enrollment form purports to contain a binding arbitration provision. The arbitration provision is small, unnoticeable, and unconscionable to the extent it is foisted on consumers with consent.

62.    Indeed, consumers do not provide affirmative consent to the arbitration provision.

63.    Importantly, a consumer is only provided with Home Again's enrollment paperwork, which purport to contain the arbitration provision, *after* their pet has already received a Home Again microchip.

64.    But once a pet receives the Home Again microchip, it is too late. At that point, the consumer is stuck with Home Again's enrollment form—which they may not, at that point, reject. Moreover, unlike many other arbitration provisions, the Home Again arbitration provision does not contain any sort of opt out. Thus, if a consumer did not want to consent to Home Again's arbitration provision, they would need their pet to undergo surgery to remove the microchip. That is not assent. Because consumers are never provided any actual choice with respect to whether they agree to Home Again's terms, the arbitration provision is unenforceable.

**F.    Plaintiff Goodman's Experience**

65.    Plaintiff Goodman adopted her dog, Schmooley, in 2018. Schmooley was a street rescue and received a Home Again microchip prior to being adopted by Plaintiff Goodman.

66.    After adopting her pet, Plaintiff Goodman updated Schmooley's owner contact info in the Home Again database. Plaintiff chose to renew Schmooley's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the Home Again database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the Home Again database free of charge. In choosing to purchase the membership, Plaintiff relied on Home Again's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff relied on Home Again's misleading website and marketing materials in deciding to pay for and renew her membership.

67.    Plaintiff Goodman did not realize she did not need to renew her membership to stay enrolled in the Home Again database until after consulting with attorneys.

68.    Had Plaintiff Goodman known she did not need to pay the Home Again membership fee to stay in the Home Again database, she would not have paid it.

**G.    Plaintiff Inman's Experience**

69.    Plaintiff Inman's cat, Thelma, received a Home Again microchip in 2014. Plaintiff Inman paid his veterinarian, VCA American River Animal Hospital located in Orangevale, California, for the procedure. Bundled in with the price of the procedure was enrollment in the Home Again database, as well as 12 months of free Home Again membership.

70.    Plaintiff Inman's cat, Louise, received a Home Again microchip in 2014. Plaintiff Inman paid his veterinarian, VCA American River Animal Hospital located in Orangevale, California, for the procedure. Bundled in with the price of the procedure was enrollment in the Home Again database, as well as 12 months of free Home Again membership.

71.    After adopting his pets, Plaintiff Inman updated Thelma and Louise's owner contact info in the Home Again database. Plaintiff Inman chose to renew his pets' membership, and pay the $21.99 annual fee for both, based on the mistaken belief that such membership was required in order to stay enrolled and keep his contact information up-to-date in the Home Again database. Plaintiff did not know before he paid for the premium service that his contact information

would stay in the Home Again database free of charge. In choosing to purchase the membership, Plaintiff relied on Home Again's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Inman relied on Home Again's misleading website and marketing materials in deciding to renew the membership.

72.     Plaintiff Inman did not realize he did not need to renew his membership to stay enrolled in the Home Again database until after consulting with attorneys.

73.     Had Plaintiff Inman known he did not need to pay the Home Again membership fee to stay in the Home Again database, he would not have paid it.

**H.     Plaintiff Canetty's Experience**

74.     Plaintiff Canetty's cat, Monkey, received a Home Again microchip in 2017. Plaintiff Canetty paid his veterinarian, Dongan Hills Veterinary located in Staten Island, New York, for the procedure. Bundled in with the price of the procedure was enrollment in the Home Again database, as well as 12 months of free Home Again membership.

75.     After adopting his pet, Plaintiff Canetty updated Monkey's owner contact info in the Home Again database. Plaintiff Canetty chose to renew his pet's membership, and pay the $19.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep his contact information up-to-date in the Home Again database. Plaintiff did not know before he paid for the premium service that his contact information would stay in the Home Again database free of charge. In choosing to purchase the membership, Plaintiff relied on Home Again's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Canetty relied on Home Again's misleading website and marketing materials in deciding to renew the membership.

76.     Plaintiff Canetty did not realize he did not need to renew his membership to stay enrolled in the Home Again database until after consulting with attorneys.

77.     Had Plaintiff Canetty known he did not need to pay the Home Again membership fee to stay in the Home Again database, he would not have paid it.

**I.     Plaintiff Young's Experience**

78.    Plaintiff Young adopted her dog, Maxi, in 2013. Maxi was a rescue and received a Home Again microchip prior to being adopted by Plaintiff Young.

79.    Plaintiff Young adopted her dog, Geiger, in 2015. Geiger was a rescue and received a Home Again microchip prior to being adopted by Plaintiff Young.

80.    Plaintiff Young's dog, Fargo, received a Home Again microchip in 2015. Plaintiff Young paid her veterinarian, Olney-Sandy Spring Veterinary Hospital located in Sandy Spring, Maryland, for the procedure. Bundled in with the price of the procedure was enrollment in the Home Again database, as well as 12 months of free Home Again membership.

81.    After adopting her pet, Plaintiff updated Maxi's contact info in the Home Again Database. After 12 months, Plaintiff Young received an email from Home Again informing her that it was time to renew her membership for Maxi. Plaintiff chose to renew her membership, and pay the $17.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the Home Again database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the Home Again database free of charge. In choosing to purchase the membership, Plaintiff relied on Home Again's misrepresentations and omissions as to the necessity of paying for membershiop. Specifically, Plaintiff relied on Home Again's misleading e-mail, website, and marketing materials in deciding to renew her membership.

82.    Similarly, after adopting her pet, Plaintiff updated Geiger's contact info in the Home Again Database. After 12 months, Plaintiff Young received an email from Home Again informing her that it was time to renew her membership for Geiger. Plaintiff chose to renew her membership, and pay the $17.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the Home Again database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the Home Again database free of charge. In choosing to purchase the membership, Plaintiff relied on Home Again's misrepresentations and omissions as to the

necessity of paying for membership. Specifically, Plaintiff relied on Home Again's misleading e-mail, website, and marketing materials in deciding to renew her membership.

83.     Also, for Fargo, after 12 months, Plaintiff Young received an email from Home Again informing her that it was time to renew her membership for Fargo. Plaintiff chose to renew her membership, and pay the $19.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the Home Again database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the Home Again database free of charge. In choosing to purchase the membership, Plaintiff relied on Home Again's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff relied on Home Again's misleading e-mail, website, and marketing materials in deciding to renew her membership.

84.     Plaintiff Young did not realize she did not need to renew her membership to stay enrolled in the Home Again database until after consulting with attorneys.

85.     Had Plaintiff Young known she did not need to pay the Home Again membership fee to stay in the Home Again database, she would not have paid it.

**J.     Plaintiff Berris's Experience**

86.     Plaintiff Berris's dog, Airbus, received a Home Again microchip in 2010. Plaintiff Berris paid Banfield Pet Hospital for the procedure. Bundled in with the price of the procedure was enrollment in the Home Again database, as well as 12 months of free Home Again membership.

87.     Plaintiff Berris's dog, Learjet, received a Home Again microchip in 2016. Plaintiff Berris paid Banfield Pet Hospital for the procedure. Bundled in with the price of the procedure was enrollment in the Home Again database, as well as 12 months of free Home Again membership.

88.     After adopting her pets, Plaintiff Berris updated Airbus and Learjet's owner contact info in the Home Again database. Plaintiff Berris chose to renew her pets' memberships, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to

stay enrolled and keep her contact information up-to-date in the Home Again database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the Home Again database free of charge. In choosing to purchase the membership, Plaintiff relied on Home Again's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Berris relied on Home Again's misleading website and marketing materials in deciding to renew the membership.

89.    Plaintiff Berris did not realize she did not need to renew her membership to stay enrolled in the Home Again database until after consulting with attorneys.

90.    Had Plaintiff Berris known she did not need to pay the Home Again membership fee to stay in the Home Again database, she would not have paid it.

## CLASS ACTION ALLEGATIONS

91.    This action is brought by Plaintiffs individually and on behalf of classes pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**The National Class is defined as follows:**

All persons who, within the applicable statute of limitations, paid a membership fee to Home Again.

**The California Subclass is defined as follows:**

All persons in the state of California who, within the applicable statute of limitations, paid a membership fee to Home Again.

**The New York Subclass is defined as follows:**

All persons in the state of New York who, within the applicable statute of limitations, paid a membership fee to Home Again.

**The Maryland Subclass is defined as follows:**

All persons in the state of Maryland who, within the applicable statute of limitations, paid a membership fee to Home Again.

**The Florida Subclass is defined as follows:**

All persons in the state of Florida who, within the applicable statute of limitations, paid a membership fee to Home Again.

70.     Excluded from the Classes are Home Again, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

71.     *Numerosity.* The Classes consist of hundreds or thousands of consumers and is thus so numerous that joinder of all members is impracticable.

72.     *Ascertainability.* The identities and addresses of all members of the Classes can be readily ascertained from Home Again's business records.

73.     *Typicality.* The claims asserted by Plaintiffs are typical of the claims of members of the Classes inasmuch as Plaintiffs and Class members were deceived by Home Again in the same manner.

74.     *Adequacy.* Plaintiffs will fairly and adequately protect the interests of the members of the Classes and do not have any interests antagonistic to those of the other members of the Classes. In addition, Plaintiffs have retained attorneys who are knowledgeable and experienced in class and complex litigation.

75.     *Commonality and Predominance.* Common questions of law and fact affecting members of the Classes predominate over any individualized issues. These predominating common questions include the following:

        a.     Whether Home Again misrepresented and/or omitted material facts to consumers;

        b.     Whether Plaintiff and members of the Classes sustained damages as a result of Home Again's conduct; and

        c.     Whether Plaintiff and members of the Classes are entitled to damages, restitution, and/or other relief as a remedy for Home Again's conduct.

76.    *Superiority.* A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

　　　a.    The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

　　　b.    This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

　　　c.    Without a class action, many class members would continue to suffer injury, and Defendant's violations of law will continue without redress while it continues to reap and retain the substantial proceeds of their wrongful conduct.

77.    *Manageability.* This action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF
### Violation of New Jersey's Consumer Fraud Act
### N.J.S.A. 56:8-1 *et seq.*
### (On Behalf of Plaintiffs and the Nationwide Class)

78.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

79.    This claim is brought on behalf of Plaintiffs and the Nationwide class.

80.    Plaintiffs contend New Jersey law applies to the Nationwide class. New Jersey has a significant interest in regulating conduct within its borders. New Jersey has a greater interest in

the Plaintiffs' claims than any other state and is most intimately concerned with the claims and outcomes of this litigation.

81.    The principal place of business of Defendant is in New Jersey and is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities.

82.    Defendant's corporate decisions with regard to its marketing representations were likely made from New Jersey and its tortious conduct emanated from this state.

83.    Application of New Jersey law is neither arbitrary or unfair because New Jersey has a significant interest in these claims and because Defendant included a New Jersey choice of law provision in its enrollment form.[8]

84.    The Consumer Fraud Act was enacted by the New Jersey legislature to protect consumers from unfair, unconscionable and deceptive business practices.

85.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff and the Class members.

---

[8] Should the Court decline to apply New Jersey law to the Nationwide class, Plaintiffs bring state law subclasses in the alternative.

86.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff and other class members into signing up for its memberships based on these misrepresentations and omissions.

87.    Had Plaintiff known membership was not required to stay in the Home Again database, she would not have paid for it.

88.    These violations have directly, foreseeably, and proximately caused damages to Plaintiff and the Class in an amount yet to be determined.

89.    Accordingly, Plaintiffs and Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## <u>SECOND CLAIM FOR RELIEF</u>
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(Asserted On Behalf of Plaintiffs Goodman and Inman and the California Class)**

90.    Plaintiffs Goodman and Inman incorporate the preceding allegations by reference as if fully set forth herein.

91.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Home Again's conduct related to deceptively representing that it provides access to its database for an annual fee violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

92.    The UCL imposes strict liability. Plaintiffs need not prove that Home Again intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

93.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

94.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

95.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

96.     Home Again committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting to consumers that they are required to pay an annual fee when in fact, a one-time fee was only required to be enrolled in Home Again's database.

97.     Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

98.     The harm to Plaintiffs and the California Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

99.     Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiffs' Third Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that Home Again deceptively represents that consumers must pay an annual fee so that their pet's microchip remains in Home Again's database; in reality, however, this marketing message is false because Home Again's (a) use of the database service causes consumers to pay for an annual membership when there is no need to.

100.    Home Again's business practices have misled Plaintiffs and the proposed California Class and will continue to mislead them in the future.

101.    Plaintiffs relied on Defendant's false representations that the annual membership provides pet owners pet locating services when, fact, the annual fee provides pet owners with useless services that no reasonable consumer would pay for if they realized what they were actually buying. Specifically, the membership provides pet owners with lost pet alerts, an emergency medical hotline, and travel assistance for lost pets who are found more than 500 miles away from their home. These services provide little practical value and are not the reason that consumers continue to pay the annual fee.

102.    By falsely marketing the pet locator service as an annual fee, Home Again deceived Plaintiffs and California Class members into renewing and purchasing the annual membership they otherwise would not make.

103.    Had Plaintiffs known the truth of the pet locator membership service fee, *i.e.,* that Home Again's "Annual Membership Fee" was useless and that once their pet's microchip was in the Home Again database, it was in for life, they would have never chosen to pay an annual fee or chosen a different microchip locator service.

104.    As a direct and proximate result of Home Again's unfair, fraudulent, and unlawful practices, Plaintiffs and California Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into renewing and purchasing the annual membership under the false belief that Home Again's true microchip database fee was prominently represented as an annual fee.

105.    As a result of its unfair, fraudulent, and unlawful conduct, Home Again has been

unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and California Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

106.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs Goodman and Inman and the members of the California Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

**<u>THIRD CLAIM FOR RELIEF</u>**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(Asserted On Behalf of Plaintiffs Goodman and Inman and the California Class)**

107.    Plaintiffs Goodman and Inman incorporate the preceding allegations by reference as if fully set forth herein.

108.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*  Plaintiffs and each member of the proposed California Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of pet locator products to consumers were "transactions" within the meaning of California Civil Code § 1761(e). Defendant's pet locator service utilized by Plaintiffs and the California Class is a "service" within the meaning of California Civil Code § 1761(b). The microchips purchased by Plaintiffs and the California Class are "goods" within the meaning of California Civil Code § 1761(a).

109.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs and the California Class which were intended to result in, and did result in, the sale of Home Again pet microchips and Home Again pet locator services:

    a.    "Representing that goods or services have . . . characteristics . . . that they

do not have" (a)(5); and

    b.    "Advertising goods or services with intent not to sell them as advertised"
(a)(9).

109.    Specifically, Home Again advertises to customers that the charge for use of its
microchip pet locator service represented by the annual fee disclosed, but this is false because
Defendant's annual fee is not necessary to keep the database updated.

110.    At no time does Home Again disclose the true nature of its annual fee to consumers;
instead, it repeatedly conceals and misrepresents this material information at several steps of the
transaction process.

111.    Home Again continues to violate the CLRA and continues to injure the public by
misleading consumers about its microchip pet locator annual fees. Accordingly, Plaintiffs seek
injunctive relief on behalf of the general public to prevent Home Again from continuing to engage
in these deceptive and illegal practices. Otherwise, Plaintiffs, the California Class members, and
members of the general public may be irreparably harmed and/or denied effective and complete
remedy if such an order is not granted.

112.    In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and the California Class
members seek injunctive and equitable relief on behalf of the general public for violations of the
CLRA, including restitution and disgorgement.

113.    Pursuant to § 1782(a) of the CLRA, Plaintiffs' counsel notified Defendant in
writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it
rectify the problems associated with the actions detailed above and give notice to all affected
consumers of Defendant's intent to act. Defendant failed to agree to rectify the problems associated
with the actions detailed above and give notice to all affected consumers within 30 days of the date

of written notice, as proscribed by §1782. Accordingly, Plaintiffs also seek actual, punitive and statutory damages, as appropriate against Defendant.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**False and Misleading Advertising**
**Business & Professions Code §§ 17500,** *et seq.*
**(Asserted On Behalf of Plaintiffs Goodman and Inman and the California Class)**

114.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

115.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with  intent … to dispose  of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

116.    Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

117.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

118.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs and the members of the California Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting their membership fees.

119.    Further, Plaintiffs and the members of the California Class seek an order

requiring Defendant to disclose such misrepresentations, and additionally request an order

awarding Plaintiffs restitution of the money wrongfully acquired by Defendant by means of said

misrepresentations.

120.    Additionally, Plaintiffs and the California Class members seek an order requiring

Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

### FIFTH CLAIM FOR RELIEF
#### Violation of N.Y. Gen. Bus. Law § 349
#### (On Behalf of Plaintiff Canetty and the New York Class)

121.    Plaintiff Canetty incorporates and restates by reference all of the preceding

allegations as though fully set forth herein.

122.    This claim is brought on behalf of Plaintiff Canetty and the New York class.

123.    N.Y. Gen. Bus. Law § 349(a) provides that "[d]eceptive acts or practices in the

conduct of any business, trade or commerce or in the furnishing of any service in this state are

hereby declared unlawful."

124.    Defendant's actions regarding its annual membership and membership fee, as

described herein, are deceptive acts or practices in the conduct of business trade or commerce of

pet and animal care.

125.    N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by

reason of any violation of this section may bring an action in his own name to enjoin such unlawful

act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or

both such actions."

126.    Certain of Defendant's policies and/or practices described in this Complaint

constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in

such conduct as a general business practice, uniformly and as a matter of policy misrepresenting

and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff and the Class members.

127.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff and other class members into signing up for its memberships based on these misrepresentations and omissions.

128.    Had Plaintiff known membership was not required to stay in the Home Again database, she would not have paid for it.

129.    Plaintiff Canetty and the New York Class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 349.

130.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

131.    As an actual and proximate result of Defendant's misconduct, Plaintiff Canetty and the New York Class were injured and suffered damages.

132.    Accordingly, Plaintiff Canetty and New York Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## SIXTH CLAIM FOR RELIEF
**Violation of Maryland's Consumer Protection Act**
**MD. Code Comm. Law §§ 13-101** *et seq.*
**(On Behalf of Plaintiff Young and the Maryland Class)**

133.    Plaintiff Young incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

134.    This claim is brought on behalf of Plaintiff Young and the Maryland class.

135.    Plaintiff Young and members of the Maryland Class are "consumers" pursuant to Md. Code Comm. Law § 13-101(c)(1).

136.    Defendant is a "merchant" and "person" pursuant to Md. Code Comm. Law § 13-101(g)-(h).

137.    The Maryland CPA prohibits a person from engaging "in any unfair, abusive, or deceptive trade practice" including in:

    a.  The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services; and

    b.  The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty or consumer services.

Md. Code. Comm. Law § 13-303.

138.    Defendant's policy and practice of misrepresenting and omitting the nature and purpose of its annual membership and membership fee as alleged herein is a violation of the Maryland CPA, including but not limited to:

    a.  False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

    b.  Representation that consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

    c.  Representation that consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

    d.  Failure to state a material fact if the failure deceives or tends to deceive;

    e.  Advertisement or offer of consumer goods, consumer realty, or consumer services without intent to sell, lease, or rent them as advertised or offered;

    f.  False or misleading representation of fact which concerns a price in comparison to

one's own price at a past or future time;

g. Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods, consumer realty, or consumer service; and

h. Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the subsequent performance of a merchant with respect to an agreement of sale, lease, or rental.

139.    Any practice prohibited by the Maryland CPA is a violation of the CPA, whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice. Md. Code. Comm. Law § 13-302.

140.    Plaintiff Young relied upon misrepresentations, misleading statements, deceptive practices, and false promises by Defendant which resulted in injury to her.

141.    Plaintiff Young has suffered an ascertainable loss of money as a result of the Defendant's use or employment of a method, act, or practice prohibited or declared to be unlawful by the provisions of the Maryland CPA.

142.    Plaintiff Young's actual out-of-pocket loss was proximately caused by Defendant's violation of the CPA.

143.    Should Plaintiff Young prevail in this action, reasonable attorneys' fees and costs are to be awarded pursuant to Md. Code. Comm. Law § 13-408(b).

**SEVENTH CLAIM FOR RELIEF**
**Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. § 501.201, _et seq._**
**(On Behalf of Plaintiff Berris and the Florida Class)**

144.    Plaintiff Berris incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

145.    This claim is brought on behalf of Plaintiff Berris and the Florida class.

146.    This cause of action is brought under Florida's Deceptive and Unfair Trade Practices Act § 501.201, *et seq*.

147.    The stated purpose of the FDUTPA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

148.    Plaintiff Berris and members of the Florida Class are "consumers" as defined by Fla. Stat. § 501.203(7).

149.    Defendant engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8) by providing pet microchip services.

150.    Defendant committed deceptive acts and practices in violation of the FDUTPA by affirmatively and knowingly misrepresenting, on its website and marketing materials, that enrollment its annual membership was required in order to keep pet owners' contact information current in its database.

151.    Defendant's actions regarding its annual membership and pet microchip service, as described herein, are deceptive acts or practices in the conduct of business, trade, or commerce of goods.

152.    Fla. Stat. § 501.211(2) provides that "any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105."

153.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff and other class members into signing up for its memberships based on these misrepresentations and omissions.

154.    Defendant's misleading and deceptive conduct regarding its annual membership and membership fee is a practice that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment.

155.    Had Plaintiff Berris known membership was not required to stay in the Home Again database, she would not have paid for it.

156.    As a direct and proximate result of Defendant's misconduct, Plaintiff Berris and the Florida Class were injured and suffered actual damages.

157.    Accordingly, Defendant is liable to Plaintiff Berris and the Florida Class members for damages in amounts to be proven at trial.

### EIGTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(Asserted on behalf of Plaintiffs and the Classes)**

158.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

159.    To the detriment of Plaintiffs and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

160.    Plaintiffs and the Classes conferred a benefit on Defendant when they paid Defendant the membership fee, which they were tricked into doing based on the belief that it was required to stay in the Home Again database.

161.    Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

162.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

163.    Plaintiffs and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes pray for judgment as follows:

A.    Certifying this action for class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding Plaintiffs and the Classes compensatory, consequential, statutory, treble, and punitive damages in an amount to be proven at trial;

C.    Awarding Plaintiffs and the Classes pre-judgment and post-judgment interest, as well as attorneys' fees and costs, at the maximum rate allowed by law;

D.    Issuing declaratory and injunctive relief to prevent Home Again's ongoing deceptive conduct as asserted herein; and

E.    Awarding Plaintiffs and the Classes such other relief as this Court may deem just and proper under the circumstances.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: August 23, 2022                            Respectfully Submitted,

*/s/ Rachel Edelsberg*
Rachel Edelsberg
**DAPEER LAW, P.A.**
New Jersey Bar No. 039272011
3331 Sunset Avenue
Ocean, New Jersey 07712
Telephone: 305-610-5223
rachel@dapeer.com

Andrew J. Shamis (*pro hac vice* to be filed)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com

Jeffrey D. Kaliel (*pro hac vice* to be filed)
Sophia G. Gold (*pro hac vice* to be filed)
**KALIELGOLD PLLC**
jkaliel@kalielpllc.com
sgold@kalielgold.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Scott Edelsberg (*pro hac vice* to be filed)
**EDELSBERG LAW, PA**
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and*
*the Proposed Class*