## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHY GOODMAN, MATTHEW INMAN, DENNIS CANETTY, BELINDA YOUNG, AND ELLEN BERRIS, on behalf of themselves and all others similarly situated, | Civ. No. 2:22-cv-02926 (WJM) |
| **Plaintiffs,** | **OPINION** |
| **v.** | |
| INTERVET, INC. d/b/a MERCK ANIMAL HEALTH d/b/a HOME AGAIN, | |
| **Defendant.** | |

In this putative class action for deceptive and misleading marketing, Defendant Intervet, Inc. d/b/a Merck Animal Health d/b/a Home Again ("Defendant") moves to dismiss Plaintiffs' entire Amended Complaint ("AC") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for failure to plead with specificity pursuant to Fed. R. Civ. P. 9(b). ECF No. 21. Defendant also seeks dismissal of the individual counts on various alternative grounds. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's motion to dismiss is **denied in part and granted in part**.

## I.    BACKGROUND

Defendant, through its Home Again program, offers pet microchip services to consumers to help locate lost pets. After a pet is implanted with a Home Again microchip, the pet owner receives paperwork from Home Again to enroll the microchip number and pet owner's contact information in the Home Again database. AC, ¶¶ 4-6, 31, ECF No. 16. The cost of the Home Again database registration fee is typically included in the cost of the microchip. *Id.* at ¶ 31. If the pet is lost in the future, a veterinarian or shelter may scan the pet's microchip to identify the pet's owner in the Home Again database. *Id.* at ¶ 24. That contact information remains in the database forever for free; pet owners may also update their information at any time for no additional fee. *Id.* at ¶ 6. Home Again also offers a premium optional service that requires an annual fee (between $17.00 and $21.99) and provides, *inter alia*, lost pet alerts and access to a medical emergency hotline. *Id.* at ¶ 40, n.4.

Plaintiffs allege that Defendant's website, forms, and marketing materials contain express misrepresentations and material omissions that deceive consumers into believing that enrollment in the annual paid membership is required to maintain and update contact information in its database. *Id.* at ¶¶ 7-9. For example, even though a consumer need not pay for "membership services" to "identify your pet if lost," *id.* at ¶¶ 41, 45-55, Home Again provides pet owners with enrollment paperwork that advertises "Home Again membership services are $19.99 per year," has a space for credit card information, and warns "Please return this form to the Home Again Pet Recovery Service or *we will not be able to identify your pet if lost*." *Id.* at ¶ 40 (emphasis added). As another example, on Home Again's website, customers may "Check Your Status" to confirm pet registration, but if membership has lapsed, the webpage does not confirm whether the pet is in the database; instead, a message pops up to call Customer Service as "[t]his pet's full service annual membership has expired." *Id.* at ¶¶ 50-51. In purported reliance on Defendant's misrepresentations, Plaintiffs chose to pay for a premium membership, which consists of "useless services that no reasonable consumer would pay for if they realized what they were actually buying." *Id.* at ¶ 8. Plaintiffs did not realize that renewal of the Home Again premium membership was not necessary to stay enrolled in the database until after consulting with attorneys. *Id.* at ¶¶ 67, 72, 76, 84, 89.

The original complaint was filed on May 19, 2022. ECF No. 1. The AC, filed on August 23, 2022 with Defendant's consent, *see* ECF No. 14, includes five plaintiffs currently from California, Ohio, New York, Maryland, or Florida. ECF No. 16. Defendant is incorporated in Delaware and maintains its principal place of business in New Jersey. AC, ¶ 16. Jurisdiction is based on the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiffs allege:

Count One: New Jersey Consumer Fraud Act ("NJ CFA"), N.J.S.A. 56:8-1, *et seq.* on behalf of Plaintiffs and the nationwide class

Count Two: California Unfair Competition Law ("CUCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* on behalf of Plaintiffs Cathy Goodman, Matthew Inman, and the California Class

Count Three: California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* on behalf of Plaintiffs Goodman, Inman, and the California Class

Count Four: California False Advertising Law ("CFAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* on behalf of Plaintiffs Goodman, Inman, and the California Class

Count Five: New York Gen. Bus. Law ("NY GBL"), N.Y. Gen. Bus Law § 349, on behalf of Plaintiff Dennis Canetty and the New York Class

Count Six: Maryland Consumer Protection Act ("MCPA"), Md. Code Comm. Law §§ 13-101 *et seq.* on behalf of Plaintiff Belinda Young and the Maryland Class

Count Seven: Florida Deceptive and Unfair Trade Practice ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, on behalf of Plaintiff Ellen Berris and the Florida Class

Count Eight: Unjust Enrichment, on behalf of Plaintiffs and the Classes

## II.   DISCUSSION

### A.   Rule 12(b)(6) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). A court must take well-pleaded allegations as true but need not credit "bald assertions" or "legal conclusions." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429 (3d Cir. 1997). That is, although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.

### B.   Counts Two - Seven: CA, NY, MD, and FL Statutes of Limitations

Defendant claims that Counts Two through Seven are time-barred. Plaintiffs respond that one or more equitable tolling doctrines - the discovery rule, continuing harm, or fraudulent concealment - extend the applicable statutes of limitations[1] for each state law

---

[1] The statute of limitations is four years under CUCL, Cal. Bus. & Prof. Code § 17208, three years under CFAL, Cal. Code Civ. Proc. § 338(a), and three years under CLRA, Cal. Civ. Code § 1783. *See Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 882 (N.D. Cal. 2019). An action under NY GBL § 349 is subject to a three-year statute of

claim beyond the actual date of enrollment. However, the Court agrees with Plaintiffs' alternative contention that it is inappropriate to decide this fact-intensive issue before discovery.

The statute of limitations is an affirmative defense that the defendant bears the burden of establishing. *Elissa H. v. Kijakazi*, No. 22-3003, 2022 WL 4626980, at *2 (D.N.J. Sept. 28, 2022) (citing *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002)). Furthermore, a time-bar must be apparent on the face of the complaint to be the basis for granting a Rule 12(b)(6) motion. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Here, the Court cannot determine from the face of the AC whether any equitable tolling applies or even whether the causes of action accrued outside of the statute of limitations period. Plaintiffs contend their pets received Home Again microchips between 2010 and possibly 2018. *See, e.g.,* AC, ¶¶ 86, 65. However, Plaintiffs do not identify when they paid the annual fee to renew or whether membership was renewed more than once. *See e.g., id.* at ¶¶ 66, 71, 75, 81, 82, 83, 88. Moreover, the AC does not indicate when Plaintiffs consulted with attorneys and learned of the purported misrepresentations. *See e.g., Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (finding dismissal of certain claims not appropriate at motion to dismiss stage where date of sale not evident on face of complaint). Thus, "the wisdom of the usual approach—decision of statute of limitations issues on a motion for summary judgment—is apparent here." *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 528 (D.N.J. 2017). Defendants' motion to dismiss on statute of limitations grounds is **denied**.

C. <u>Entire Complaint: Fed. R. Civ. P. Rules 12(b)(6) and 9(b)</u>

Defendant moves to dismiss the entire AC, contending that Plaintiffs have not identified any express misrepresentations in their pleading and instead that its communications do convey to customers that access to the database does not require the annual paid premium service. For example, the Intervet communication referenced in ¶ 58 of the AC is captioned, "Renew Your HomeAgain Membership Today!" and states, "With your annual HomeAgain membership, you'll get so much more than just <u>basic</u>* pet recovery." At the bottom of the advertisement, "*Basic service" is defined: "Your pet's microchip number and your contact information will remain in the HomeAgain Recovery Database forever. You can update your contact information at www.HomeAgain.com at any time." Even if this particular communication is not deceptive, Plaintiffs identify other

---

limitations and accrues when a plaintiff is injured rather than when discovery of the alleged deceptive practice occurs. *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 459, 461 (S.D.N.Y. 2014); *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 452 (E.D.N.Y. 2007). MCPA claims have a three-year statute of limitations, which accrues when the claimant in fact knew or reasonably should have known of the wrong. *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 272 (D. Md. 2015); *Clark v. Bank of Am., N.A.*, 561 F. Supp. 3d 542, 558 (D. Md. 2021) (citing *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (Md. 1981)). The delayed discovery rule does not apply to FDUPTA claims, which have a four-year statute of limitations. *See* Fla. Stat. § 95.11(3)(f); *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 Fed. App'x 899, 906 (11th Cir. 2013).

communications, such as the enrollment form and website, that raise a reasonable inference that Defendant mislead or deceived consumers. *See* AC, ¶¶ 40, 50-51, described above.

Next, Defendant posits that Plaintiffs have not identified with particularly any misrepresentation that they personally read before paying for the Home Again premium service. Under Rule 9(b), which is a stringent pleading standard, a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake" sufficient to "place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (internal quotes and citation omitted).

At the outset, the Court notes that Rule 9(b) does not apply to Plaintiffs' NY GBL or unjust enrichment claims. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("an action under § 349 … need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed.R.Civ.P."); *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 08-1057, 2008 WL 5381227, at *9 (D.N.J. Dec. 17, 2008) ("an unjust enrichment claim need not be pled with the same specificity as a claim sounding in fraud. Rather, the more liberal notice pleading standard of Fed. R. Civ. 8(a) applies."). Plaintiffs' NY GBL and unjust enrichment claims satisfy the more liberal requirement of Rule 8(a). *See e.g., Pelman,* 396 F.3d 508 (finding that complaint that alleged various promotional misrepresentations but did not expressly plead that plaintiff relied on any particular representation met requirements of Rule 8(a)).

Plaintiffs' remaining state statutory claims, however, must comply with Rule 9(b)'s heightened pleading requirement. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (NJ CFA); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Clorox Co. v. Rckett Benckiser Group PLC*, 398 F. Supp.3d 623, 634 (N.D. Cal. 2019) (CLRA, CUCL, and CFAL claims grounded in fraud); *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (MCPA); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1327-28 (S.D. Fla. 2017) (noting Rule 9(b) heightened pleading standard applies to FDUPTA claims "where the gravamen of the claim sounds in fraud"). Here, Plaintiffs' statutory claims sound in fraud. *See e.g.,* AC, ¶ 38 (showing example of marketing material "[i]ndicative of the fraud"). Plaintiffs accuse Defendant of intentionally "luring" customers into paying for an annual membership by "obscuring" and "conflating" the difference between its annual membership and its pet recovery database. *Id.* at ¶¶ 6, 33, 37.

Thus, to satisfy Rule 9(b), Plaintiffs must *specifically* allege what particular advertisement misled or deceived them into purchasing an annual premium membership,

in addition to where and when Plaintiffs saw such fraudulent ads. *See, e.g., Cooper v. Bristol-Myers Squibb Co.*, No. 07-885, 2009 WL 5206130, at \*9 (D.N.J. Dec. 30, 2009) (dismissing state statutory deceptive trade claim because pleading failed "to identify which, if any, of the promotional or marketing materials were received, viewed or relied upon by Plaintiff, and if they were, when these materials were viewed and how they were relied upon."); *Kearns*, 567 F.3d at 1126 (affirming dismissal where plaintiff did not specify when he was exposed to television advertisements and other sales materials or which sales materials he relied on in making purchase decision); *In re Arris Cable Modem Consumer Litig.*, No. 17-01834, 2018 WL 288085, at \*8 (N.D. Cal. Jan. 4, 2018) (noting courts "have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon."); *Bryant v. Koppers, Inc.*, No. 21-2008, 2022 WL 4134311, at \*7 (D. Md. Sept. 12, 2022) (finding plaintiffs failed to satisfy heightened pleading standard necessary for fraud allegation under MCPA where plaintiffs identified misrepresentation but failed to detail when made, by whom, or that it was made to plaintiffs), *appeal filed* 4th Cir. Sept. 27, 2022; *Dimartino v. BMW of North America, LLC*, No. 15-8447, 2016 WL 4260788, at \*7 (D.N.J. Aug. 11, 2016) (dismissing FDUTPA claims where plaintiff provided "no specifics as to who made the alleged misrepresentations . . ., what those statements were, or in fact when they were made (when the vehicle was purchased or brought in for repairs)."). In this case, the AC describes numerous allegedly deceptive communications, but does not specify what, when, or where Plaintiffs were exposed to such misleading advertisements or communications. Defendant's motion to dismiss for failure to comply with Rule 9(b) is **granted** as to the consumer protection claims of New Jersey, California, Maryland, and Florida. Those claims, except for the NJ CFA claim discussed separately below, are **dismissed without prejudice**. Because Plaintiffs have the opportunity to replead these claims, the Court will proceed to address Defendants' remaining arguments.

### D. Counts Two, Three, Four, Six: Reliance in CA and MD Claims

Generally, an action for fraud-based claims involving false advertising and misrepresentation to consumers under the CUCL, CFAL, and CLRA requires Plaintiffs to plead *actual* reliance. *See Corbett*, 567 F. Supp. 3d at 1185; *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012) (citing cases). A plaintiff bringing suit under the MCPA must also allege reliance, which occurs when a "'misrepresentation substantially induces the consumer's choice.'". *Bryant v. Koppers, Inc.*, No. 21-2008, 2022 WL 4134311, at \*6 (D. Md. Sept. 12, 2022) (citing *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013)).

To sufficiently plead reliance, Plaintiffs acknowledge that they need only allege that they saw and read the deceptive statements, *see* Pls.' Opp'n Br. at 18, ECF No. 22, but nowhere in the AC do Plaintiffs plead that they in fact saw and read any such statements, or when or where that occurred. Instead, Plaintiffs assert that they "relied" on Home

6

Again's misleading website and marketing materials in choosing to pay for annual memberships but fail to set forth any facts to support that conclusion. AC, ¶¶ 66, 71, 81, 82, 88, 103. *See e.g., Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (finding CLRA claim failed where plaintiff pled damages were proximate result of defendant's unlawful business practices but did not allege facts showing reliance such as whether plaintiff visited defendant's website or read defendant's misrepresentation); *Metague v. Woodbolt Distribution, LLC,* No. 20-02186, 2021 WL 2457153, at *9 (D. Md. June 16, 2021) (holding detrimental reliance properly alleged where pleading provided specific time, place and manner of false advertising). The California and Maryland consumer protection claims fail to sufficiently allege detrimental reliance but may be amended.

    E.  Count Three: California Consumer Legal Remedies Act

Defendant requests dismissal of the CLRA claim arguing that: 1) Plaintiffs failed to comply with the CLRA's pre-litigation notice requirement; and 2) the allegations, even taken as true, do not allege a violation of the CLRA.

    a.  *Pre-Litigation Notice*

Section 1782(a) of the CLRA requires that prior to filing "an action for damages," a plaintiff must "provide notice to a defendant of the CLRA violations by certified or registered mail 30 days or more before filing an action for damages." *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1200 (S.D. Cal. 2021); Cal. Civ. Code § 1782(a). The notice must be in writing and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation" of the CLRA. Cal. Civ. Code § 1782(a)(2). The only exception is § 1782(d), which "allows a plaintiff to file a complaint for injunctive relief under the CLRA without the notice requirement and permits the plaintiff to subsequently amend the complaint to include a request for damages." *Corbett*, 567 F. Supp. 3d at 1200. "Federal courts have required strict adherence to the statute's notice provision to accomplish the CLRA's goals of expeditious remediation before litigation." *Nacarino v. KSF Acquisition Corp.*, No. 22-04021, 2022 WL 17178688, at *5 (N.D. Cal. Nov. 23, 2022) (internal quotes and citation omitted).

Defendant claims that Plaintiff Goodman[2] did not send the § 1782(a) notice more than 30 days prior to filing suit on May 19, 2022. In response, Plaintiffs insist that because their initial suit sought restitution and disgorgement, *see* Compl., ¶ 112, ECF No. 1, it did not constitute an "action for damages" requiring notice pursuant to § 1782(a). Even so, ultimately Plaintiffs did give notice before filing the original complaint, *see id.* at ¶ 113, although the Court is unable to determine from the face of the AC whether notice was given at least 30 days prior to commencement of the "action for damages." Nonetheless,

---

[2] Although the parties' briefs discuss notice provided by Goodman, the AC states that "Plaintiffs' counsel" provided CLRA notice and does not distinguish between Goodman and Inman. *See* AC, ¶ 113.

dismissal is unwarranted for even "[w]here a plaintiff fails to provide such notice, the damages 'claim must simply be dismissed until 30 days or more after the plaintiff complies' with the dictates of section 1782." *Corbett*, 567 F. Supp. 3d at 1200 (citing *Bitton v. Gencor Nutrientes, Inc.*, 654 Fed. Appx. 358, 362 (9th Cir. 2016) (quoting Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235 (2009)). Thus, assuming Plaintiffs' CLRA notice was given on May 18, 2022 as Defendant claims, *see* Pls.' Opp'n Br. at 30, more than 30 days have passed. This issue is now moot. Defendant's motion to dismiss Count Three for failure to comply with the notice requirement in § 1782(a) is **denied.**

### b. *Failure to State a Claim*

Plaintiffs allege violations of Cal. Civ. Code § 1770(a)(5) and (a)(9).[3] *See* AC, ¶ 109. "To maintain a CLRA action, plaintiffs must plead facts demonstrating that (1) the defendant committed an unlawful practice and (2) the consumer suffered harm as a result." *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 686 (N.D. Cal. 2020) (citing *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009)). Defendant argues that Plaintiffs fail to state a CLRA claim because the Home Again premium membership does in fact include the advertised benefit of the updated database. However, the failure to include that benefit in the premium membership is not the unlawful practice or harm alleged in this suit. Rather, Plaintiffs' suit "concerns Home Again's deceptive marketing of its membership program," which "tricks" consumers into believing that an annual paid membership is necessary to keep and update contact information in the database. AC, ¶ 3. Apart from the deficiencies in pleading that Plaintiffs will have the opportunity to cure, *see* discussion above, Plaintiffs' allegations state a plausible unlawful practice under the CLRA. Violations of the CLRA "are evaluated from the vantage point of a "reasonable consumer," which means that a plaintiff must "show that members of the public are likely to be deceived." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (citing *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008)). The reasonable consumer standard "raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations." *Id.* (citing *Williams,* 552 F.3d at 939). Count Three for failure to state a claim is **denied.**

### F. Counts One and Eight: NJ Claims

Defendant asserts that the New Jersey claims must be dismissed because the laws of the Plaintiffs' home states govern. The determination of what body of substantive law to apply in a diversity case requires the Court to look to the forum state's choice of law rules, *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)), and to conduct that analysis on an issue-

---

[3] Cal. Civ. Code § 1770(a) makes unlawful "unfair methods of competition and unfair or deceptive acts or practices" including "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have" and "(9) Advertising goods or services with intent not to sell them as advertised."

by-issue basis, *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (2007). Under New Jersey choice of law rules, where there is a contractual choice of law provision, it "will be upheld unless doing so would violate its public policy." *Curtiss-Wright Corp. v. Rodney Hunt Co.*, 1 F. Supp. 3d 277, 284 (D.N.J. 2014) (citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (1992)). Absent an applicable choice of law clause, the Court must employ New Jersey's two-step choice of law analysis. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 254 (3d Cir. 2010). The first inquiry is whether an actual conflict exists. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). If no conflict exists, the law of the forum state applies. *Id.* If there is a conflict, then the second step is to weigh the "most significant relationship" test, as found in the Restatement (Second) of Conflicts of Law ("Restatement") that corresponds to the plaintiff's cause of action. *Cooper*, 374 Fed. Appx. at 254; *Camp Jaycee*, 197 N.J. 132.

    *a.  Count One: NJ CFA*

Defendant contends that the NJ CFA claim warrants dismissal because there is no relationship to New Jersey other than the location of Defendant's headquarters. Plaintiffs disagree, arguing that the significant relationship analysis is unnecessary because "Defendant included a New Jersey choice of law provision in its enrollment form." AC, ¶ 83. However, taking as true that Defendant's enrollment form included a New Jersey choice of law provision, Plaintiffs have not pled that they are party to any such agreement. *See e.g., id.* at ¶¶ 4, 65, 78, 79 (alleging enrollment papers are provided "immediately" after a pet receives a Home Again microchip, but that some pets had received Home Again microchips *prior* to adoption by Plaintiffs). Even if Plaintiffs are party to such enrollment agreements, they have not attached any such contract to the AC or shown that the scope of a valid choice of law clause governs non-contractual statutory claims. At most, Plaintiffs contend only that a choice of law provision "may" govern Plaintiffs' claim. Pls.' Opp'n Br., at 21. In fact, courts often have found that "a choice of law provision is limited in application 'to the underlying agreement itself, and not to related fraud or non-contractual claims.'" *Wagner v. Catalent Pharm. Sols., LLC*, No. 18-10065, 2019 WL 1746308, at *3 (D.N.J. Apr. 18, 2019) (citing *Black Box Corp. v. Markham*, 127 Fed. Appx. 22, 25 (3d Cir. 2005)); *Est. of Cotton v. Senior Plan. Servs., LLC*, No. 19-8921, 2020 WL 7022740, at *9 (D.N.J. Nov. 30, 2020) (finding that choice of law provision did not encompass statutory consumer fraud claims).

In any event, Plaintiffs have not requested leave to replead this issue; instead, Plaintiffs contend that discovery into the relevant contractual agreements between the parties is necessary before deciding what state law applies. Although full factual development may be necessary to properly conduct a choice of law analysis involving claims that are contract or quasi-contract, which is often a "very fact-intensive inquiry," *Bond v. Johnson & Johnson*, No. 21-05327, 2021 WL 6050178, at *6 (D.N.J. Dec. 21, 2021), *aff'd*, No. 22-1127, 2022 WL 4594185 (3d Cir. Sept. 30, 2022), the Third Circuit frequently decides choice of law issues at the motion to dismiss phase. *Gray v. BMW of*

*North America, LLC,* 22 F. Supp. 3d 373, 380 (D.N.J. 2014) (citing cases). Indeed, choice of law questions in class action consumer fraud disputes, such as the one here, are often adjudicated at the motion to dismiss stage. *See Schechter v. Hyundai Motor Am.,* No. 18-13634, 2020 WL 1528038, at *6 (D.N.J. Mar. 31, 2020); *see e.g., Cooper,* 374 Fed. Appx. at 255 n.5 (rejecting contention that lower court erred in resolving choice of law determination as to statutory consumer fraud claim at motion to dismiss stage). Thus, it is not premature to perform the choice of law analysis on the motion to dismiss in this case.

Turning to the first step of New Jersey's two-step choice-of-law analysis, Defendant argues, and Plaintiffs do not dispute, that conflicts exist between the NJ CFA and the other state laws at issue. *See Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.,* 365 N.J. Super. 520, 570 (Law. Div. 2003) ("A review of the consumer fraud statutes of the various states, and the cases decided thereunder demonstrates the existence of numerous actual conflicts on various issues between provisions of the NJCFA and those of the statutes enacted by other states."); *Schechter,* 2020 WL 1528038, at *4 ("courts in this District have recognized that the NJCFA materially conflicts with the consumer protection statutes of California, the CLRA and UCL." (citing cases)).

Because a conflict exists, the second step is to weigh the "most significant relationship" test found in § 148 of the Restatement, which governs claims sounding in fraud or misrepresentation. *See Cooper,* 374 Fed. Appx. at 254. Where the reliance and the misrepresentation take place in different states, a court must consider:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement, §148(2). Additionally, the Court must also consider "'the principles set forth in § 6 of the Restatement, which include (1) the interests of interstate comity, (2) the interests of the parties, (3) the interests underlying the field of tort law, (4) the interests of judicial administration, and (5) the competing interests of the states.'" *Schechter,* 2020 WL 1528038, at *5 (citing *Grandalski v. Quest Diagnostics Inc.,* 767 F.3d 175, 182 (3d Cir. 2014)).

In examining these factors, New Jersey is where 1) Defendant is headquartered; and 2) where the representations were made.[4] In contrast, Plaintiffs' home states are where: 1) Plaintiffs reside; 2) Plaintiffs acted in reliance on representations; 3) Plaintiffs received the representations; and 4) the pets and microchips that are the subject of the transactions are located. While the parties dispute whether under the § 148(2)(f), the membership "services" would be performed in New Jersey or the home states, that last factor is inapplicable as "there is no contract performance required by Plaintiff[s]." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 448 (D.N.J. 2012). Thus, the Court finds that under the Restatement[5] factors, Plaintiffs' home states have the most significant interest to the claims in this suit. *See e.g., Maniscalco*, 709 F.3d at 209 ("If any two of the [148(2)] contacts, apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." (citing Restatement, § 148(2), cmt j)); *Cooper*, 374 Fed. Appx. at 255 (finding that plaintiff who bought television in Arizona was not entitled to sue under NJ CFA as only relationship to New Jersey was location of defendant's headquarters); *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 (D.N.J. 2014) ("A Plaintiff may bring state law claims only under the law of the state where he or she lived and the alleged injury occurred."). Accordingly, Defendant's motion to dismiss the NJ CFA claim is **granted**; Count One is **dismissed**.

### b.  *Count Eight: Unjust Enrichment*

The parties disagree whether New Jersey law applies to the unjust enrichment claim and at minimum, Plaintiffs argue that the choice of law on this claim should not be decided until after discovery. The Court concludes that it need not decide what law governs this issue because even if New Jersey law applies, Defendants are correct that Plaintiffs' unjust enrichment claim fails to state a claim. First, "a plaintiff cannot sustain an unjust enrichment claim where there is an adequate remedy at law." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 259 (D.N.J. 2020). In the case at bar, Plaintiffs have alleged adequate remedies at law - statutory consumer fraud claims based on the same wrongful conduct for which Plaintiffs assert that Defendant will be unjustly enriched if permitted to retain the membership fees obtained through misrepresentation and deception. *See id.*

Second, while Plaintiffs may plead alternative theories of recovery, *see id.* at 259-60, *HUMC Opco LLC v. United Benefit Fund*, No. 16-168, 2016 WL 6634878, at *4 (D.N.J. Nov. 7, 2016), "New Jersey does not recognize unjust enrichment as an independent tort cause of action." *McGuire v. BMW of N. Am., LLC*, 13-7356, 2014 WL

---

[4] *See Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 207-08 (3d Cir. 2013) (rejecting line of cases that hold representations directed to purchaser's home state are made there even if originated from headquarters' state).

[5] For the same reasons explained by in *Maniscalco*, 709 F.3d at 209-10, § 6 factors weigh in favor of applying the laws of Plaintiffs' home states.

2566132, at *3 (D.N.J. June 6, 2014); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936-37 (3d Cir.1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim."). Here, Plaintiffs' assertions that they were misled as to the necessity of a paid membership are allegations that sound in tort. *See* Restatement of Restitution Ch. 7 (Introductory Note) (1937) ("There are a number of differences between a tort action which, though restitutionary, is based primarily in wrongdoing, and a quasi-contractual action in which the wrong by the defendant is only incidental to his unjust enrichment."). *See e.g., Schechter*, 2019 WL 3416902, at *11 (concluding unjust enrichment claim based on failure to disclose and concealment of defect sounded in tort); *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (dismissing unjust enrichment claim as sounding in tort where plaintiff claimed purchase of printer was because Samsung misled him as to fitness of printer); *Gray v. Bayer Corp.*, No. 08-4716, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009) (finding unjust enrichment claim that "but for Defendants' unlawful conduct, she would not have purchased the products in question" was tort theory).[6]

In contrast, "[t]o establish unjust enrichment as a basis for quasi-contractual liability, 'a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust.'" *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004) (citing *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). Plaintiffs must also show that they "expected renumeration from the defendant at the time [they] performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp.*, 135 N.J. at 554. Here, Plaintiffs do not claim that they failed to receive the membership services for which they paid, that they expected remuneration in return, or that Defendant was enriched beyond any contractual rights. As such, the cases cited by Plaintiffs in which quasi-contract claims are alleged are inapposite. *See, e.g., Mizrahi v. Checkolite Int'l, Inc.*, No. 14-7987, 2015 WL 4388336, at *3 (D.N.J. July 15, 2015) (denying motion to dismiss as it relates to quasi-contract claims); *Pauly v. Houlihan's Restaurants, Inc.*, No. 12-0025, 2012 WL 6652754, at *7 (D.N.J. Dec. 20, 2012) ("Plaintiff's unjust enrichment claim is plead as an alternative to Plaintiff's breach of contract claim in the event a contract is found not to exist."). Accordingly, Defendant's motion to dismiss Count Eight is **granted**. Plaintiffs' unjust enrichment claim is **dismissed**.

## G. Injunctive Relief

Defendant moves to dismiss Plaintiffs' request for injunctive relief "to prevent Home Again's ongoing deceptive conduct," AC, ¶ D, on the grounds that Plaintiffs lack

---

[6] Plaintiffs rely on *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp.2d 192 (D.N.J. 2012), but in that case, the court did not address whether the unjust enrichment sounded in tort or contract, but whether purchasers of the product from a third-party retailer could pursue a quasi-contractual unjust enrichment claim against the manufacturer given that New Jersey requires "some direct relationship" between the parties. *Id.* at 196; *Lynch v. Tropicana Prod., Inc.*, No. 11-07382, 2013 WL 2645050, at *10 (D.N.J. June 12, 2013) (same).

Article III standing. The Court agrees. The Supreme Court has made clear that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021); *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (requiring plaintiffs to establish likelihood of suffering future injury from defendant's conduct and that threat of injury must be "sufficiently real and immediate" to have standing to seek injunctive relief). Critically, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* at 223-24 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Plaintiffs here have not identified any real or immediate harm to them as they now know that they do not have to pay for premium membership for their contact information to remain and be updated in the Home Again database. *See e.g., In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 292–93 (3d Cir. 2018) (holding plaintiff lacked standing to seek injunctive relief because plaintiff was unlikely to "possibly be deceived again into buying Baby Powder without being aware of those same risks. She is simply not at risk of suffering an economic 'injury,' and we will not give cognizance to this sort of 'stop me before I buy again' claim"); *see also McNair*, 672 F.3d at 224-25 (finding that plaintiffs, who were no longer magazine subscribers and were already aware of the allegedly deceptive practices from which they sought future protection, lacked standing to seek injunctive relief because "speaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess."). Nor have Plaintiffs identified any nonconjectural future harmful effects likely to result from Defendant's past conduct. *See e.g., In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 550 (D.N.J. 2004) (declining to dismiss injunctive relief claims as moot because "injunctive relief may still be required to address the effects of those violations that persist"). Additionally, Plaintiffs cannot cure their lack of standing by pleading an intent to subscribe to Home Again's premium membership in the future. *See In re Johnson & Johnson*, 903 F.3d at 293 (declining to limit holding in *McNair* that a previously deceived consumer lacks standing to seek injunctive relief "to instances when plaintiffs do not allege an intention to make purchases in the future.").

Finally, Article III standing is a requirement distinct from Plaintiffs' assertion of statutory standing under the FDUPTA. *See Thorne v. Pep Boys - Manny, Moe & Jack Inc.*, 397 F. Supp. 3d 657, 666 (E.D. Pa. 2019) ("a statutory grant of a right and the ability to sue to vindicate that right does not automatically satisfy the injury-in-fact requirement of Article III." (citing *Spokeo, Inc. v. Robins*, 578 U.S. 300, 339 (2016)). Accordingly, Defendant's request to dismiss the request for injunctive relief is **granted**.

## III.  CONCLUSION

For the reasons noted above, Defendant's motion to dismiss is **granted in part and denied in part.** Plaintiffs may file an amended pleading curing the deficiencies discussed herein within 30 days of the date of this Opinion.

*/s/ William J. Martini*

**WILLIAM J. MARTINI, U.S.D.J.**

Date: March 6, 2023