## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CATHY GOODMAN, MATTHEW INMAN, DENNIS CANETTY, BELINDA YOUNG, AND ELLEN BERRIS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

INTERVET, INC. d/b/a MERCK ANIMAL HEALTH d/b/a HOME AGAIN,

Defendant.

Civ. No. 2:22-cv-02926 (WJM)

OPINION

In this action alleging deceptive and misleading marketing, Defendant Intervet, Inc. d/b/a Merck Animal Health d/b/a Home Again ("Defendant") moves to dismiss Counts I-IV and VI-XI of Plaintiffs' Second Amended Complaint ("SAC"), and to strike nationwide the class allegation pursuant to Fed. R. Civ. P. Rules 12(b)(6), 9(b), and 23(d)(1)(D). ECF No. 42. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons below, Defendant's motion to dismiss is **denied in part and granted in part**.

## I.   BACKGROUND[1]

Defendant, through its Home Again program, offers pet microchip services to consumers to help locate lost pets. After a pet is implanted with a microchip, the pet owner's contact information remains in a pet recovery database forever and may be updated at any time for no additional fee. SAC, ¶ 6. Plaintiffs allege that Defendant "lures" consumers into believing that enrollment in the Home Again's optional annual paid membership is required to maintain and update contact information in its database. *Id.* at ¶¶ 7-9, 38. The paid membership provides additional services such as lost pet alerts and access to a medical emergency hotline. *Id.* at ¶ 45, n.4. Plaintiffs specify several communications and advertisements that they believe are misleading or deceptive:

---

[1] The facts are further set forth in the Court's March 6, 2023 Opinion ("March Op" or "March Opinion"). ECF No. 24.

- Home Again's website homepage offers "enroll now" or "renew membership" prompts, which do not address, but "obscure" the difference between the paid annual membership and maintaining registration in the pet recovery database for free. *Id.* at ¶¶ 6, 51.[2]
- The website FAQ page states: "Once enrolled, your pet is entitled to all the additional benefits of the HomeAgain annual membership, including:
  - *Updates to your pet or contact information online or by phone*
  - 24/7 access to our lost pet hotline
  - Rapid Lost Pet Alerts and Lost Pet Posters
  - 24/7 access to the Emergency Medical Hotline
  - Travel Assistance for Found Pets
  - and more

  *Id.* at ¶ 43 (emphasis added).
- The website offers customers the option to "Check Your Status" to confirm pet registration, but if membership has lapsed, a message pops up to call Customer Service as "[t]his pet's full service annual membership has expired." *Id.* at ¶¶ 50-51.
- The enrollment paperwork advertises "Home Again membership services are $19.99 per year," has a space for credit card information, and warns "Please return this form to the Home Again Pet Recovery Service or we will not be able to identify your pet if lost." *Id.* at ¶ 45. Once a pet owner is enrolled, Home Again provides its annual paid membership for free for the first 12 months, which Plaintiffs contend adds to consumer confusion because consumers then believe they are receiving 12 months of free access to the pet recovery database. *Id.* at ¶ 48.
- Home Again emails consumers after 12 months to remind them to renew their membership. *Id.* at ¶ 49. Those emails are captioned, "Renew Your HomeAgain Membership Today!" and offer: "With your annual HomeAgain membership, you'll get so much more than just basic* pet recovery." The bottom of the advertisement states: "*Basic service: Your pet's microchip number and your contact information will remain in the HomeAgain Recovery Database forever. You can update your contact information at www.HomeAgain.com at any time." *Id.* at ¶ 58.

   After commencing suit on May 19, 2022, Plaintiffs filed an Amended Complaint ("FAC") on August 23, 2022 asserting 8 claims by 5 plaintiffs from 4 states. *See* FAC, ECF No. 16. On March 6, 2023, the Court denied in part and granted in part Defendant's motion to dismiss the FAC. *See* March Op. Subsequently, Plaintiffs filed the SAC alleging a nationwide class, *see* SAC, ¶ 125, and seeking injunctive relief on behalf of 10 plaintiffs under 11 different state statutory consumer protection laws from 9 states:

- Count I: NJ CFA, N.J.S.A. 56:8-1, *et seq.* on behalf of Plaintiff Gongjun Peng and the NJ Class

---

[2] The SAC contains two paragraphs that are labeled as ¶ 51. This reference is to the first ¶ 51.

- <u>Count II</u>: California Unfair Competition Law ("CUCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* on behalf of Plaintiffs Cathy Goodman, Matthew Inman, and the California Class
- <u>Count III</u>: California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* on behalf of Plaintiffs Goodman, Inman, and the California Class
- <u>Count IV</u>: California False Advertising Law ("CFAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* on behalf of Plaintiffs Goodman, Inman, and the California Class
- <u>Count V</u>: New York Gen. Bus. Law ("NY GBL"), N.Y. Gen. Bus Law § 349, on behalf of Plaintiff Dennis Canetty and the New York Class
- <u>Count VI</u>: Maryland Consumer Protection Act ("MCPA"), Md. Code Comm. Law §§ 13-101, *et seq.* on behalf of Plaintiff Belinda Young and the Maryland Class
- <u>Count VII</u>: Florida Deceptive and Unfair Trade Practice ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, on behalf of Plaintiff Ellen Berris and the Florida Class
- <u>Count VIII</u>: Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505, *et seq.,* on behalf of Lyncia Sirmans and the Illinois Class
- <u>Count IX</u>: Georgia Fair Business Practices Act ("GA FBPA"), Ga. Code Ann. § 10-1-390, *et seq.,* on behalf of Kristi Schaller and the Georgia Class[3]
- <u>Count X</u>: Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PA UTP"), 73 Pa. Cons. Stat. §§ 201-2, 201-3, *et seq.,* on behalf of Rachel Lesser and the Pennsylvania Class
- <u>Count XI</u>: Michigan Consumer Protection Act ("MI CPA"), Mich. Comp. Laws §§ 445.901 – 445.922, *et seq.,* on behalf of Kathryn Lyell and the Michigan Class

Defendant now moves to dismiss all counts (except Count V) of the SAC. Plaintiffs concede to the portion of Defendant's present motion seeking to strike Plaintiffs' nationwide class allegation and request for injunctive relief.

## II.    DISCUSSION

### A.    <u>Amended Pleading</u>

On March 6, 2023, the Court denied Defendant's initial motion to dismiss the FAC based on statute of limitations grounds but granted the motion as to: New Jersey Consumer Fraud Act ("NJ CFA") claims asserted by non-New Jersey plaintiffs based on a choice-of-law analysis; unjust enrichment claims for failure to state a claim; and Plaintiffs' request for injunctive relief due to lack of Article III standing. The remaining state statutory consumer protection claims, except for those under New York law, were dismissed without

---

[3] The GFBPA prohibits individual litigants from bringing an action "in a representative capacity." Ga. Code § 10-1-399(a). In contrast, Fed. R. Civ. P. Rule 23 allows members of a class to sue "as representative parties on behalf of all members." Courts do not agree on whether the class action bar in the GFBPA is substantive (and supersedes Rule 23) or procedural (and is displaced by Rule 23). *See Chapman v General Motors LLC,* 531 F. Supp. 3d 1257, 1301 (E.D. Mich. 2021). As this issue has not been briefed and GFBPA individual claims survive, the Court need not resolve this question at this juncture.

prejudice for failure to plead with sufficient specificity the false or misleading communications that each Plaintiff personally viewed and relied on. Accordingly, Plaintiffs were permitted to file an "amended pleading curing the deficiencies discussed" in its March Opinion. March Op. at 14.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Plaintiffs received no such consent or leave of Court. Instead, in flagrant disregard of the parameters of the Court's March Opinion, the SAC doubled the number of plaintiffs and added additional claims. Such amendments clearly exceeded the scope of the Court's express instruction to file an "amended pleading curing the deficiencies" of the claims that were dismissed *without prejudice*. ECF No. 25. Plaintiffs' contention that they were merely "curing" a "deficiency" by finding, for example, a class representative to bring claims under the NJ CFA is disingenuous. Apart from the fact that the SAC adds more than just a New Jersey plaintiff, the NJ CFA claim on behalf of all Plaintiffs and the nationwide class was expressly dismissed **with prejudice**, *see* March 6, 2023 Order, at ¶ 2, and thus, was not a "deficient" claim subject to cure.

Moreover, although Magistrate Judge Kiel's April 13, 2023 Pretrial Scheduling Order, only allows Plaintiffs to file "*motions* to add new parties" by July 15, 2023, ECF No. 38 (emphasis added), Plaintiffs brazenly misrepresent to the Court that Judge Kiel's Order "squarely permits the parties to add new parties." *See* Pls.' Opp'n Br. at 15. Nevertheless, because Rule 15(a)(2) provides that "the court should freely give leave [to amend] when justice so requires," the Court **denies** Defendant's motion to dismiss the unauthorized new claims as procedurally improper but warns Plaintiffs' counsel that any further misrepresentations or failure to comply with Court Orders may incur sanctions.

B. Pleading with Particularly Under Rule 9(b): Counts I-IV and VI-XI

Plaintiffs do not dispute that their newly asserted state statutory claims must meet heightened pleading requirements under Rule 9(b) or otherwise be sufficiently pled. *See* March 6 Op. at 5-6; *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) ("Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." (internal quotes and citation omitted)).

Except as discussed below, *see infra*, II.B.2, the Court finds that the SAC satisfies the particularity requirements of Rule 9(b). Plaintiffs describe specific misrepresentations on various portions of Home Again's website, the renewal reminder email, and/or enrollment forms; Plaintiffs they allege that they saw and read such statements, when they did so, and that they were misled and detrimentally relied on those misrepresentations in choosing to pay for membership. For example, in contrast to the FAC where Plaintiff

Goodman did not specify what "misrepresentations and omissions" or "misleading website and marketing materials" she personally saw and relied on or when she saw them, Goodman now alleges in the SAC that on or about September 2019, she received the renewal reminder email, visited Home Again website, and relied on the specific misrepresentations on the website homepage and FAQs described in the pleading in deciding to pay for and renew membership. SAC, ¶ 67.

    1. *When*

Defendant objects that Lyell and Lesser do not allege when they visited Home Again's website or that they even did so. However, considering the other paragraphs in the SAC, the Court infers that Lyell and Lesser visited and relied on Home Again's website sometime around when they each received the renewal reminder emails from Home Again (about July 2020 for Lyell, *id.* at ¶ 116, and April 2016, *id.* at ¶ 121). *See Nielsen Elecs. Inst. v. Student Fin. Corp.*, No. 99-285, 2001 WL 34367324, at *10 (D. Del. Jan. 16, 2001) (reviewing claims under Rule 9(b) and finding unclear claims illuminated by other paragraphs in complaint). Similarly, a reasonable inference can be drawn that Berris adopted her pets around 2010 and 2016 when she paid for her pets' microchips, *see* SAC, at ¶¶ 90-91, and that 12 months later, she received the renewal reminder emails. *See id.* at ¶¶ 92-93. Such reasonable inferences can be made as to Plaintiffs' other claims. *See id.* at ¶¶ 81-84 (Young); *id.* at ¶¶ 107-110 (Schaller); *id.* at ¶¶ 70-73 (Inman); *id.* at ¶¶ 97-99 (Peng). Rule 9(b)'s specificity requirement does not preclude the Court from drawing "all reasonable inferences that can be drawn from the pleadings … in favor of the plaintiff." *See In re Midlantic Corp. Shareholder Litig.*, 758 F. Supp. 226, 233 (D.N.J. 1990).

Next, although Inman, Sirman, and Peng do not identify the day, week, or month when they visited the Home Again website, Defendant cites no binding authority that requires a plaintiff to plead that level of detail to satisfy the "when" requirement of Rule 9(b). *See EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996) (noting that in Third Circuit, "Rule 9(b) does not require that the complaint allege the date, time or place of the alleged inequitable conduct, provided the complaint gives the defendants notice of the precise misconduct alleged." (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 788 n.4 (3d Cir. 1984), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))). Plaintiffs have pled "when" with enough particularity to allow Defendant to prepare a responsive pleading.

    2. *What and Where*

Defendant argues that consumers could not have been misled or deceived because the renewal reminder emails[4] are "crystal clear" that customers did not need to pay for

---

[4] The Court did not previously rule on whether the renewal emails were misleading because "even if" they were not misleading, the FAC alleged other plausibly misleading communications. *See* March 6 Op., at 4-5.

premium annual membership. Def. Br. at 20. While the email does provide that "basic service" means the pet's microchip number and owner's contact information remain in the database forever, that information is in an asterisked disclaimer at the bottom of the email notice and does not specify that "basic service" is free or that staying registered in the database is separate from the annual paid membership. Similarly, although notice of membership expiration may not be a false communication, if membership has lapsed, the "Check Your Status" tool fails to confirm whether the pet is in the database, which potentially adds to the confusion. Moreover, Defendant incorrectly asserts that Plaintiffs, by identifying only one purportedly false or misleading answer on the FAQs page, have only identified the *location* of the alleged misrepresentation in the FAQs. To the contrary, the FAQ "discussed herein [the SAC]," *see e.g.,* SAC, ¶ 99, refers to the specific misleading communication identified in ¶ 43 that Plaintiffs purport personally seeing upon visiting Home Again's website. In fact, Defendant acknowledges that the "SAC claims an answer to one question on the 'FAQ page' is false." Def. Br. at 26.

Thus, reading the SAC as a whole and construing it in the light most favorable to Plaintiffs, Defendant's motion is **denied** as to the renewal reminder emails, the warning statement on the enrollment papers, and/or Home Again's website homepage, FAQs, and "Check Your Status" tool as they plausibly misled consumers to believe that a paid membership was required to remain in the database. *See Nielsen Elecs. Inst.,* 2001 WL 34367324, at *10 (reading complaint as a whole and concluding plaintiff alleged sufficient facts to satisfy Rule 9(b)); *see also Francis v. Gen. Motors, LLC,* 504 F. Supp. 3d 659, 683 (E.D. Mich. 2020) (in deciding whether Rule 9(b) has been met, "[t]he allegations are construed as a whole and read in a light most favorable to the plaintiffs, not piecemeal and in a vacuum as the defendant would take them.").

In contrast, Plaintiffs' claims that rest on "other misrepresentations on the website" or "marketing materials" that are not specifically identified or described in the SAC, *see e.g., id.* at ¶¶ 104, 117, lack the requisite specificity to satisfy Rule 9(b) or give Defendant sufficient notice of the claims to enable filing a responsive pleading. *See In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 276-77 (3d Cir. 2006); *Kronfeld v. First Jersey Nat. Bank,* 638 F. Supp. 1454, 1465 (D.N.J. 1986). The same deficiency exists as to Berris' claims that are based on conversations with unidentified customer service representatives informing her in 2011 and 2017 that "to stay enrolled in the Home Again database, she would need to pay the fee." SAC, ¶ 94; *see Klein v. Gen. Nutrition Companies, Inc.,* 186 F.3d 338, 345 (3d Cir. 1999) ("[Rule] 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements."). Defendant's motion is **granted** as to claims based on the unspecified "other misrepresentations," "marketing materials," or conversations with unidentified service representatives in 2011 and 2017.

> 3. *Reliance*

According to Defendant, Young and Schaller cannot allege detrimental reliance on any misrepresentations they saw after deciding to pay for the premium membership. *See* SAC ¶¶ 81-86, 87 (alleging Young chose to renew membership after receiving renewal reminder emails in 2014 and 2016 and again renewed relying on misrepresentations viewed in October 2016 and October 2017); *id.* at ¶¶ 109-111 (alleging Schaller chose to renew in 2017 based on reminder email and website and again in June 2022 based on same). Because the paid membership requires annual renewal, however, it is plausible that Plaintiffs continued to rely on later statements for later membership renewals. Plaintiffs have sufficiently pled reliance and to the extent necessary under the ICFA, Sirman has adequately pled she was actually deceived. *See e.g.*, SAC, ¶¶ 92-93; ¶¶ 103-106.

### C. GA Pre-Litigation Demand Requirement

The GFBPA requires a plaintiff to deliver to a potential defendant, "[a]t least 30 days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered ..." Ga. Code Ann. § 10-1-399(b). This pre-litigation demand does not apply "if the prospective respondent does not maintain a place of business or does not keep assets within the state." *Id.* Here, the SAC does not indicate that the 30-day notice was provided, but Plaintiffs are correct that nothing therein suggests that Defendant maintains a place of business or assets in Georgia. Thus, the pre-litigation notice is inapplicable. *See e.g., In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 850 (N.D. Ill. 2020) (drawing reasonable inference from factual allegations in complaint that defendant does not maintain an office in Georgia and thus statutory notice prerequisite was not required), *aff'd sub nom. Mayor & City Council of Baltimore v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022); *Barge v. Bristol-Mayers Squibb Co.*, No. 07-783, 2009 WL 5206127, at *6 (D.N.J. Dec. 30, 2009) (same). Defendant's motion to dismiss the GFBPA claim is **denied**.

## III.   CONCLUSION

Defendant's motion to dismiss is **denied** except as follows: the nationwide class allegation and the request for injunctive relief are **stricken**; because Plaintiffs have amended their complaint twice, claims based on unidentified "other misrepresentations on the website" and unspecified "marketing materials" are **dismissed with prejudice**; Berris' claims based on conversations with unnamed customer representatives are **dismissed with prejudice**.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: August *10*, 2023

7