## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHY GOODMAN, MATTHEW INMAN, DENNIS CANETTY, BELINDA YOUNG, ELLEN BERRIS, GONGJUN PENG, LYNCIA SIRMANS, KRISTI SCHALLER, RACHEL LESSER, KATHRYN LYELL, CJ FERRY, LYDIA GOMEZ, LARHONDA MAJIED, AMY CRAWFORD, GAIL HES, CAROLYN SHEPARDSON, ERIN RADCLIFFE, ALISON BARNUM, and KIMBERLY AMACHER on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>INTERVET, INC. d/b/a MERCK ANIMAL HEALTH d/b/a HOMEAGAIN,<br><br>     Defendant. | **Case No. 2:22-cv-02926-WJM-ESK**<br><br>THIRD AMENDED CLASS ACTION COMPLAINT<br><br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiffs Cathy Goodman, Matthew Inman, Dennis Canetty, Belinda Young, Ellen Berris, Gongjun Peng, Lyncia Sirmans, Kristi Schaller, Rachel Lesser, Kathryn Lyell, CJ Ferry, Lydia Gomez, LaRhonda Majied, Amy Crawford, Gail Hes, Carolyn Shepardson, Erin Radcliffe, Alison Barnum, and Kimberly Amacher (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Complaint against Defendant Intervet, Inc., d/b/a Merck Animal Health d/b/a HomeAgain ("HomeAgain" or "Defendant"), and state as follows:

### NATURE OF THE ACTION

1.    This is a class action brought on behalf of Plaintiffs and similarly situated pet owners who were deceived into purchasing annual HomeAgain memberships after their pets received HomeAgain microchips based on HomeAgain's misrepresentations and omissions that

such memberships are required in order to stay registered in the HomeAgain database.

2.      In recent years, an increasing number of pet owners have elected to have their pets microchipped for the peace of mind that in the unlikely event their pet is lost, a microchip may allow their pet to return home safely.

3.      HomeAgain, a subsidiary of Merck, is a multi-billion-dollar company that profits handsomely from the sale of its microchips. This case does not concern the microchips themselves, but instead concerns HomeAgain's deceptive marketing of its membership program, which it tricks consumers into purchasing based on the mistaken belief that such memberships are necessary to maintain pet owners' contact information in the HomeAgain database.

4.      Here's how it works. Immediately after a pet receives a HomeAgain microchip, the pet's owner is provided paperwork from HomeAgain which allows the pet owner to enroll in the HomeAgain database.

5.      The database is what allows the microchip to function. If a pet is lost and the pet's microchip is scanned, the HomeAgain database maintains and provides the contact information for the pet's owner. The database, in other words, is the entire reason why consumers purchase microchips: the database enables reunions between owners and their lost pets.

6.      But what consumers do not realize—and HomeAgain intentionally obscures—is that after the initial registration, the owner's contact information remains in the HomeAgain database, for free, forever. Likewise, the owner's contact information can always be updated, for free, forever. In other words, consumers do not need to purchase a HomeAgain annual membership to keep or update their contact information in HomeAgain's database; it will remain in the database regardless of a consumer's membership status and the contact information can always be updated, free of charge.

7.      But HomeAgain profits from keeping that secret. That is why in marketing materials, HomeAgain consistently links its annual "membership" with its "database"—even though the two have nothing to do with each other. In other words, HomeAgain intentionally leads consumers to believe that payment of its membership fee is required to stay within the HomeAgain database, when it is not.

8.      In fact, HomeAgain's annual membership provides pet owners with useless services that no reasonable consumer would pay for if they realized what they were actually buying. Specifically, the membership provides pet owners with lost pet alerts, an emergency medical hotline, and travel assistance for lost pets who are found more than 500 miles away from their home. These services provide little practical value and are not the reason that consumers continue to pay the annual fee.

9.      HomeAgain's misrepresentations and omissions are misleading. If consumers knew they were not required to pay the annual fee to maintain their information in the HomeAgain database, they would not pay for the membership.

10.     Plaintiffs and other consumers have been damaged by HomeAgain's misleading and deceptive conduct. Plaintiffs bring this action on behalf of themselves, the putative Classes, and the general public. Plaintiffs seek actual damages, statutory damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent HomeAgain from continuing to engage in its illegal practices described herein.

**PARTIES**

11.     Plaintiff Cathy Goodman is a citizen and resident of Los Angeles, California. Plaintiff Goodman enrolled in HomeAgain's membership for her dog, Schmooley, in 2018.

12.     Plaintiff Matthew Inman is a recent citizen and resident of Zanesville, Ohio. A substantial portion of relevant events giving rise to this action occurred while Plaintiff Inman

was a citizen and resident of Orangevale, California. Plaintiff Inman enrolled in HomeAgain's membership for his cats, Thelma and Louise, in 2014.

13.  Plaintiff Dennis Canetty is a citizen and resident of Staten Island, New York. Plaintiff Canetty enrolled in HomeAgain's membership for his cat, Monkey, in 2017.

14.  Plaintiff Belinda Young is a citizen and resident of Randallstown, Maryland. Plaintiff Young enrolled in HomeAgain's membership for her dogs, Maxi, Geiger, and Fargo, in 2013, 2015, and 2015, respectively.

15.  Plaintiff Ellen Berris is a citizen and resident of Boynton Beach, Florida. Plaintiff Berris enrolled in HomeAgain's membership for her dogs, Airbus and Learjet, in 2010 and 2016, respectively.

16.  Plaintiff Gongjun Peng is a citizen and resident of Wayne, New Jersey. Plaintiff Peng enrolled in HomeAgain's membership for his dog, Piggy Jr., in 2021.

17.  Plaintiff Lyncia Sirmans is a citizen and resident of Romeoville, Illinois. Plaintiff Sirmans enrolled in HomeAgain's membership for her dog, Snickers, in 2017.

18.  Plaintiff Kristi Schaller is a citizen and resident of Athens, Georgia. Plaintiff Schaller enrolled in HomeAgain's membership for her cats, Larry, Jasper, and Binx, in 2016, 2021,  and 2021, respectively.

19.  Plaintiff Rachel Lesser is a citizen and resident of Yardley, Pennsylvania. Plaintiff Lesser enrolled in HomeAgain's membership for her dog, Lucy, in 2019.

20.  Plaintiff Kathryn Lyell is a citizen and resident of Lincoln Park, Michigan. Plaintiff Lyell enrolled in HomeAgain's membership for her dog, Lola, in 2015.

21.  Plaintiff CJ Ferry is a citizen and resident of Falls River, Massachusetts. Plaintiff Ferry enrolled in HomeAgain's membership for his dog, Bentley, in 2013.

22.    Plaintiff Lydia Gomez is a citizen and resident of Minneapolis, Minnesota. Plaintiff Gomez enrolled in HomeAgain's membership for her dog, Kobe, in 2020.

23.    Plaintiff LaRhonda Majied is a citizen and resident of Denver, Colorado. Plaintiff Majied enrolled in HomeAgain's membership for her dog, Zena, in 2019.

24.    Plaintiff Amy Crawford is a citizen and resident of South Euclid, Ohio. Plaintiff Crawford enrolled in HomeAgain's membership for her dog, Frances, in 2018.

25.    Plaintiff Gail Hes is a citizen and resident of Wylie, Texas. Plaintiff Hes enrolled in HomeAgain's membership for her dog, Jaycee, in 2016.

26.    Plaintiff Carolyn Shepardson is a citizen and resident of Avondale, Arizona. Plaintiff Shepardson enrolled in HomeAgain's membership for her dog, Stella, in 2019.

27.    Plaintiff Erin Radcliffe is a citizen and resident of Albuquerque, New Mexico. Plaintiff Radcliffe enrolled in HomeAgain's membership for her dog, Cuzco, in 2017.

28.    Plaintiff Alison Barnum is a citizen and resident of Southaven, Mississippi. Plaintiff Barnum enrolled in HomeAgain's membership for her dog, Lido, in 2018.

29.    Plaintiff Kimberly Amacher is a citizen and resident of Mount Juliet, Tennessee. Plaintiff Amacher enrolled in HomeAgain's membership for her dogs, Gracy and Dolly, in 2006 and 2020 respectively.

30.    Defendant maintains its principal place of business in Madison, New Jersey and is incorporated in Delaware.

## JURISDICTION AND VENUE

31.    This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiffs) and one Defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class

Action Fairness Act, 28 U.S.C § 1332(d).

32.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant is based here and therefore a substantial portion of the events giving rise to Plaintiffs' causes of action occurred in this District.

33.    This Court has personal jurisdiction over Defendant because the Defendant's headquarters are located in this State.

## FACTUAL ALLEGATIONS

**A.    Background: Pet Microchipping is a Popular Way to Minimize the Chance of Losing A Pet**

34.    An astounding 67% of American households, or 85 million families, own a pet.

35.    The pet industry—once limited to Milkbones and kibble—has exploded in popularity with several corporations beginning in recent years to market and sell pet-oriented products and services. Pet daycares, pet hotels, and even pet spas have begun to pop up with regularity.

36.    More and more, Americans regard their pets as members of their family and Americans are heartbroken at the prospect of accidentally losing a pet.

37.    Losing a pet is startingly common. An estimated one in three pets become lost at some point in their lives.[1]

38.    Microchips are used to reunite lost pets with their owners. A microchip is a radio-frequency identification transponder that carries a unique identification number. When the microchip is scanned by a vet or shelter, it transmits an ID number. The ID number is then linked to the owner's contact information in a pet recovery database, allowing a pet to be reunited with an owner.

_____

[1] https://www.akc.org/expert-advice/lifestyle/how-do-dog-microchips-work/

39.     According to the American Kennel Club, pets with microchips are up to 20 times more likely to be reunited with their owners than pets without microchips.

40.     Although pet microchipping has been around since the 1980s, in recent years, microchipping has exploded in popularity and today it is estimated that 3.5 million pets have received microchip implants.[2]

41.     At least part of the reason for the rise in popularity in microchips is their ease. The microchip itself is roughly the size of a grain of rice and is typically injected under the skin between a dog or cat's shoulder blade.  The invasiveness of the procedure is often compared to giving a dog a vaccine.

42.     Microchips are also inexpensive. According to petfinder.com, the average cost to have a microchip implanted by a veterinarian is $45—a one–time fee that often includes registration in a pet recovery database.[3]

**B.     HomeAgain's Microchips**

43.     HomeAgain is a leading provider of pet microchips. In addition to offering the microchip itself, HomeAgain offers a popular pet recovery database.

44.     The HomeAgain microchip and pet recovery database work independently from one another. In other words, a pet owner whose pet has an off-brand microchip may still register with the HomeAgain pet recovery database, and a pet owner whose pet has a HomeAgain microchip may still register with a different database.

45.     As a practical matter, however, most people with HomeAgain microchips register with the HomeAgain pet recovery database. That is because registration with most pet recovery

---

[2] https://www.peta.org/living/animal-companions/microchip/

[3] https://www.petfinder.com/dogs/lost-and-found-dogs/microchip-faqs/#:~:text=The%20average%20cost%20to%20have,may%20already%20have%20a%20microchip.

databases require a fee, and the cost of the HomeAgain database registration fee is typically bundled in with the cost of the microchip. Additionally, after a pet receives a HomeAgain microchip, their owner is handed paperwork which allows the pet owner to enroll in the HomeAgain database. Thus, most pet owners whose pet receive a HomeAgain microchip end up signing up for the HomeAgain pet recovery database.

46.     In addition to bundling the enrollment in the database with the price of the microchip, HomeAgain also offers those who purchase a HomeAgain microchip 12 months of free HomeAgain "membership."

47.     The HomeAgain membership is designed to lure consumers into paying an annual fee under the guise that such a fee is necessary to stay in the HomeAgain pet recovery database.

48.     Over and over again, HomeAgain links its "membership" (which requires an annual fee) with its database (which is free for life). Consumers pay the annual membership fee believing they must do so in order to keep their contact information up-to-date in the HomeAgain database.

49.     In reality, however, the annual membership offers useless services that no reasonable consumer would pay for.  Specifically, the membership provides consumers with lost pet alerts, an emergency medical hotline, and travel assistance for lost pets who are found more than 500 miles away from their home. Because it is highly unlikely that a pet owner would ever use any of these services (and may be able to get many of these same services elsewhere for free), the membership provides no real benefit to consumers.

50.     Most importantly, the membership services are not the reason that consumers pay the annual fee. By and large, consumers pay the annual fee because they believe they must do so to keep their microchip working. If consumers knew the truth about what the membership fee was for, they would not pay the annual fee.

**C.**    **HomeAgain's Misrepresentations and Omissions**

51.    In numerous marketing materials, HomeAgain consistently conflates its annual "membership" with its pet recovery "database," when in fact, the two have nothing to do with each other. HomeAgain intentionally obscures the difference between "*enrollment*" in the HomeAgain annual membership with "*registration*" in the HomeAgain database. In reality, a consumer can "register'—and stay registered—in the HomeAgain database without paying for a HomeAgain membership.

52.    Indicative of the fraud is HomeAgain's clever answer to the question, "What is HomeAgain" on its FAQ page, HomeAgain states:

> HomeAgain is an advanced lost pet recovery service dedicated to the safety and well being of your pet. Our system is best utilized when a microchip with a unique ID number is injected between the shoulder blades of your pet. This can be done by a veterinarian if your pet is not already microchipped. ***Once your pet is microchipped the next step is to enroll your pet's microchip ID. Enrollment adds a description and photo, along with your contact information, in the* [HomeAgain National Pet Recovery Database](#)*. This information is critical to reuniting you immediately with your lost pet once he is found.***
> ***Once enrolled, your pet is entitled to all the additional benefits of the HomeAgain annual membership, including:***
>
> - **Updates to your pet or contact information online or by phone**
> - **24/7 access to our lost pet hotline**
> - **Rapid Lost Pet Alerts and Lost Pet Posters**
> - **24/7 access to the Emergency Medical Hotline**
> - **Travel Assistance for Found Pets**
> - **and more**

53.    Thus, HomeAgain intentionally provides the misimpression that enrollment in the database is linked to, and part of, enrollment in the annual membership. For that reason, consumers reasonably believe that allowing the membership to lapse will also lead to the lapse of the listing in the database—a falsehood HomeAgain perpetuates at every turn.

54.     HomeAgain's deception starts at the veterinarian's office. Specifically, after receiving the HomeAgain microchip, HomeAgain provides pet owners with paperwork which prominently represents that "HomeAgain membership services are $19.99 per year"[4] and provides a space for consumers to provide their credit card information. The paperwork instructs consumers "Please return this form to the HomeAgain Pet Recovery Service or we will not be able to identify your pet if lost."

55.     But these representations are not true. A consumer does not need to provide their credit card information or pay the annual fee for "membership services" "to identify your pet if lost." In fact, registration in the database is typically included in the cost of the microchip, and maintenance in the database is free.

56.     Nowhere on this form does HomeAgain explain the difference between registration in its database and enrollment in its membership program. HomeAgain does not clarify anywhere on the form that the membership program provides separate "services" other than the listing in the pet recovery database.

57.     But the deception does not end there. That's because HomeAgain provides its membership for free for the first 12 months after enrollment in its database. This tactic is intentional and further increases consumer confusion. When consumers receive 12 months of free "membership," they reasonably believe that they are receiving 12 months of access to the HomeAgain pet recovery database.

58.     After 12 months, if a consumer did not initially provide their credit card information on their enrollment form, HomeAgain emails consumers to remind them to renew their membership. Again, these renewal emails mislead consumers into believing they must

_____

[4] Depending on the date and state of enrollment, the membership fee varies between $17.99 and $21.99 per year.

renew, and pay the annual fee, in order to stay in the database.

59.    Moreover, HomeAgain's website contains many of the same misrepresentations and omissions found in HomeAgain's pamphlets and e-mails. Over and over, HomeAgain links "enrollment" and "membership" with "registration" and the database.

60.    The deception starts on HomeAgain's homepage. Prominent on the HomeAgain home page is the following prompt:



61.    This by itself is deceptive because "enroll now" and "renew membership" are two entirely different things. Specifically, the "enroll now" button provides a link for consumers to register in the database. The renew membership button, however, provides a link to renew HomeAgain's valueless membership services, which have nothing to do with the database.

62.    Moreover, the "Check Your Status" to confirm your pet is registered with HomeAgain link is also deceptive. That hyperlink leads consumers to the following link:



63.    If a consumer checks whether their pet is "registered," but their membership has lapsed, they will receive the following message:

## Important Message

This pet's full service annual membership has expired. Please log in or call Customer Service at 1-888-HomeAgain (1-888-466-3242) to renew.

**Login to Online Account**

64.    This is another lie. Nowhere on this page does HomeAgain inform the owner that their pet is <u>still</u> "registered" in the HomeAgain database and will stay in the HomeAgain database irrespective of their decision to "renew" their "full service annual membership." To the contrary, HomeAgain leads consumers to believe their pet is ***not*** "enrolled" or "registered" in the database because their membership is expired and they have chosen not to pay the annual fee.

65.    The deception does not end there. Elsewhere on its website, HomeAgain urges consumers to become a HomeAgain member to "manage your account and update your contact

information."



66.     Again, this is misleading: a pet owner does *not* need to become a member or pay the annual fee to "manage your account and update your contact information." This can be done for free, without being a HomeAgain member.

67.     These misrepresentations are littered everywhere on the HomeAgain website. Indeed, in its FAQ, HomeAgain asks the question "My pet is already microchipped, but how do I know if he is enrolled?" The answer is: "Look up your pet's HomeAgain membership status. You'll be asked to enter your pet's microchip ID." If a consumer follows the prompt, they are directed to a page which allows them to "confirm their pet is registered with HomeAgain." If a consumer enters the microchip ID number, and their owner has not paid the membership fee, they will be told: "This pet's full service annual membership has expired. Please log in or call Customer Service at 1-888-HomeAgain (1-888-466-3242) to renew." *See supra*.

68.     Nowhere in its FAQs does HomeAgain explain the difference between its membership and the enrollment in its pet recovery database, and nowhere on its consumer-facing site does HomeAgain clearly explain that a consumer does not need to pay the annual

membership fee to stay in the HomeAgain database and keep their contact information up-to-date.

**D.    Numerous Online Complaints Confirm HomeAgain's Deception**

69.    HomeAgain's deception is widely discussed online. So common is the consumer confusion, in fact, that several veterinary offices have taken it upon themselves to post warnings to their customers. These vets want to warn consumers that they do *not* need to buy the HomeAgain membership, despite HomeAgain's representations to the contrary.

70.    For example, the Girard Veterinary Clinic in Philadelphia, Pennsylvania has on its website the following warning:

> **Recently we have been made aware that clients have received notices from homeagain that they must renew their membership for an annual fee. Please know that you never HAVE to renew your membership!**
>
> [ . . . ]
>
> **We are sending out this public announcement to make sure that people aware of the somewhat misleading mail/e-mail they receive. (view a copy of it here) We want to make sure that everyone knows you do NOT need to renew this membership if you do not want to. Your pet's microchip number and your contact information will ALWAYS remain in the pet database and you can ALWAYS update your contact information whether or not you use this premium service.[5]**

71.    Likewise, the Bellevue Animal Hospital in Omaha, Nebraska warns its customers: "A common misconception among pet owners is that you must renew your pet's registration annually, at the cost of $19.99, in order to keep your pet's microchip number, description, your name, and your contact details in the HomeAgain database. This is not the case! Your pet's information and your contact information stays in the HomeAgain database for life."[6]

---

[5] https://www.girardvetclinic.com/single-post/2019/02/13/homeagain-microchip-membership-information

[6]    https://bellevueanimalhospital.com/faqs-do-i-need-to-renew-my-homeagain-membership-every-year/

72.    The following consumer complaints are just a sampling from the numerous

complaints online:[7]

- *Like others, I knew nothing about microchip services when I got my two Great Danes chipped by this company. Microchipping is good, right? So just pay the fee at the vet, they'll take care of it, and everything will be fine. Yeah, right! I took my Danes in and got them chipped at the same time by my vet for $30 each. My vet assured me that was the only charge I would have to pay. But it was                                                                                  not.*

    *One year later, I was moving to a new house. I went to the HomeAgain website to change my address and they would not let me change it without paying more money! I called them and a rude representative informed me that I could either pay $20/each dog ANNUALLY for the ability to change their info, or a lifetime "membership" of $40 each dog.*

- *HomeAgain tries to upsell services by sending a misleading alert after you HAVE to pay the mandatory $20.00 fee for the first year, that your coverage has expired. It leads people to believe that the service for finding a pet has expired.*

- *Seriously? $**19.99** per Year for this damn inconvenient microchip . . . We took our cat to Banfield and they never mentioned the damn microchip they were putting in required an annual fee of $20.*

- *We get home from our appointment and I attempted to register our microchip online and after entering pages of info, I'm told there is a $**19.99** annual fee to have this microchip registered with them. I've never heard of anything like that and if I knew about the additional annual fees ahead of time, I would have held off on microchipping her since an unregistered microchip is essentially useless.*

**E.    HomeAgain's Arbitration Provision is Unenforceable**

73.    The fine print of the HomeAgain enrollment form purports to contain a binding

arbitration provision. The arbitration provision is small, unnoticeable, and unconscionable to the

extent it is foisted on consumers with consent.

74.    Indeed, consumers do not provide affirmative consent to the arbitration provision.

---

[7] These complaints are excerpted from Yelp, where Home Again has 1.5 stars out of 5. *See* https://www.yelp.com/biz/homeagain-readington?q=%2419.99

75.     Importantly, a consumer is only provided with HomeAgain's enrollment paperwork, which purport to contain the arbitration provision, *after* their pet has already received a HomeAgain microchip.

76.     But once a pet receives the HomeAgain microchip, it is too late. At that point, the consumer is stuck with HomeAgain's enrollment form—which they may not, at that point, reject. Moreover, unlike many other arbitration provisions, the HomeAgain arbitration provision does not contain any sort of opt out. Thus, if a consumer did not want to consent to HomeAgain's arbitration provision, they would need their pet to undergo surgery to remove the microchip. That is not assent. Because consumers are never provided any actual choice with respect to whether they agree to HomeAgain's terms, the arbitration provision is unenforceable.

### F.     Plaintiff Goodman's Experience

77.     Plaintiff Goodman adopted her dog, Schmooley, in 2018. Schmooley was a street rescue and received a HomeAgain microchip prior to being adopted by Plaintiff Goodman.

78.     After adopting her pet, Plaintiff Goodman updated Schmooley's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Goodman received an email from HomeAgain informing her that it was time to renew her membership for Schmooley. Plaintiff chose to renew Schmooley's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff Goodman did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

79.     In choosing to purchase the membership, Plaintiff Goodman relied on HomeAgain's misrepresentations and omissions on its website as to the necessity of paying for membership. Specifically, on or about September 2019, after receiving numerous emails that her pet's HomeAgain membership was about to expire, Plaintiff Goodman visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew her membership.

80.     Plaintiff Goodman did not realize she did not need to renew her membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

81.     Had Plaintiff Goodman known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

### G.      Plaintiff Inman's Experience

82.     Plaintiff Inman's cat, Thelma, received a HomeAgain microchip in December 2014. Plaintiff Inman paid his veterinarian, VCA American River Animal Hospital located in Orangevale, California, for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

83.     Plaintiff Inman's cat, Louise, received a HomeAgain microchip in December 2014. Plaintiff Inman paid his veterinarian, VCA American River Animal Hospital located in Orangevale, California, for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

84.     After adopting his pets, Plaintiff Inman updated Thelma and Louise's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Inman received emails from HomeAgain informing him that it was time to renew his memberships for Thelma and Louise. Plaintiff Inman chose to renew his pets' membership, and pay the $21.99 annual fee for both, based on the mistaken belief that such membership was required in order to stay enrolled and keep his contact information up-to-date in the HomeAgain database. Plaintiff did not know before he paid for the premium service that his contact information would stay in the HomeAgain database free of charge.

85.     In choosing to purchase the membership, Plaintiff relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Inman visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew his membership.

86.    Plaintiff Inman did not realize he did not need to renew his membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

87.    Had Plaintiff Inman known he did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, he would not have paid it.

**H.    Plaintiff Canetty's Experience**

88.    Plaintiff Canetty's cat, Monkey, received a HomeAgain microchip in July 2017. Plaintiff Canetty paid his veterinarian, Dongan Hills Veterinary located in Staten Island, New York, for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

89.    After adopting his pet, Plaintiff Canetty updated Monkey's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Canetty received emails from HomeAgain informing him that it was time to renew his membership for Monkey. Plaintiff Canetty chose to renew his pet's membership, and pay the $19.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep his contact information up-to-date in the HomeAgain database. Plaintiff did not know before he paid for the premium service that his contact information would stay in the HomeAgain database free of charge.

90.    In choosing to purchase the membership, Plaintiff relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, in July 2018, after receiving numerous emails that his pet's HomeAgain membership was about to expire, Plaintiff Canetty visited HomeAgain's website and relied on the website's misleading "Check Your Status" tool which stated "[t]his pet's full service annual membership has expired" in deciding to pay for and renew his membership, as well as, the HomeAgain's website homepage, FAQs, and other misrepresentations on the website discussed herein.

91.    Plaintiff Canetty did not realize he did not need to renew his membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

92.     Had Plaintiff Canetty known he did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, he would not have paid it.

**I.     Plaintiff Young's Experience**

93.     Plaintiff Young adopted her dog, Maxi, in 2013. Maxi was a rescue and received a HomeAgain microchip prior to being adopted by Plaintiff Young.

94.     Plaintiff Young  adopted her dog, Geiger, in 2015. Geiger was a rescue and received a HomeAgain microchip prior to being adopted by Plaintiff Young.

95.     Plaintiff Young's dog, Fargo, received a HomeAgain microchip in 2015. Plaintiff Young paid her veterinarian, Olney-Sandy Spring Veterinary Hospital located in Sandy Spring, Maryland, for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

96.     After adopting her pet, Plaintiff Young updated Maxi's contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Young received an email from HomeAgain informing her that it was time to renew her membership for Maxi. Plaintiff Young chose to renew her membership, and pay the $17.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge. In choosing to purchase the membership, Plaintiff Young relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff relied on HomeAgain's misleading e-mail, website, and marketing materials in deciding to renew her membership.

97.     After adopting her pet, Plaintiff Young updated Geiger's contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Young received an email from HomeAgain informing her that it was time to renew her membership for Geiger. Plaintiff Young chose to renew her membership, and pay the $19.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact

information up-to-date in the HomeAgain database. Plaintiff Young did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

98.    Similarly, after adopting her pet, Plaintiff Young updated Fargo's contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Young received an email from HomeAgain informing her that it was time to renew her membership for Fargo. Plaintiff chose to renew her membership, and pay the $19.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

99.    In choosing to purchase the memberships, Plaintiff relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, on or about October 2016 and October 2017, after receiving numerous emails that her pets' HomeAgain membership was about to expire, Plaintiff  Young visited HomeAgain's website and relied on the website's misleading "Check Your Status" tool which stated "[t]his pet's full service annual membership has expired" as well as, the website's homepage, FAQs, and other misrepresentations on the website discussed herein, and the emails she received from HomeAgain about renewing her pets' memberships.

100.    Plaintiff Young did not realize she did not need to renew her membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

101.    Had Plaintiff Young known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**J.    Plaintiff Berris's Experience**

102.    Plaintiff Berris's dog, Airbus, received a HomeAgain microchip in 2010. Plaintiff Berris paid Banfield Pet Hospital for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain

membership.

103.    Plaintiff Berris's dog, Learjet, received a HomeAgain microchip in 2016. Plaintiff Berris paid Banfield Pet Hospital for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

104.    After adopting her pet, Plaintiff Berris updated Airbus owner contact info in the HomeAgain database. After 12 months, Plaintiff Berris received emails from HomeAgain informing her that it was time to renew her membership for Airbus. Plaintiff Berris chose to renew her pet's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

105.    After adopting her pet, Plaintiff Berris updated Learjet's owner contact info in the HomeAgain database. After 12 months, Plaintiff Berris received emails from HomeAgain informing her that it was time to renew her membership for Learjet. Plaintiff Berris chose to renew her pets' memberships, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

106.    In choosing to purchase the memberships, Plaintiff relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Berris relied on the emails she received from HomeAgain about her pets' soon to expire memberships, as well as conversations with customer service representatives in deciding to renew the memberships. Plaintiff Berris recalls speaking to a customer service representative both in 2011 and in 2017, at the time she paid to renew her memberships. Though Plaintiff does not recall the customer service representative's names, both times the customer service representatives informed Plaintiff Berris that in order to stay enrolled in the HomeAgain

database, she would need to pay the fee. At no point did the customer service representatives disclose that it was not necessary to pay the fee to stay enrolled in the HomeAgain database.

107.    Plaintiff Berris did not realize she did not need to renew her membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

108.    Had Plaintiff Berris known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**K.    Plaintiff Peng's Experience**

109.    Plaintiff Peng's dog, Pigg Jr., received a HomeAgain microchip in 2021. Plaintiff Peng paid Edgewater Animal Hospital located in Edgewater, New Jersey for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

110.    After adopting his pet, Plaintiff Peng updated Piggy Jr.'s owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Peng received emails from HomeAgain informing him that it was time to renew his membership for Piggy Jr. Plaintiff Peng chose to renew his pet's memberships, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep his contact information up-to-date in the HomeAgain database. Plaintiff Peng did not know before he paid for the premium service that his contact information would stay in the HomeAgain database free of charge.

111.    In choosing to purchase the membership, Plaintiff relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, when creating his online account with HomeAgain, Plaintiff visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew his membership.

112.    Plaintiff Peng did not realize he did not need to renew his membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

113.    Had Plaintiff Peng known he did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, he would not have paid it.

**L.    Plaintiff Sirmans's Experience**

114.    Plaintiff Sirmans's dog, Snickers, received a HomeAgain microchip in August 2017. Plaintiff Sirmans paid Lockport Animal Hospital in Lockport, Illinois for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

115.    After adopting her pet, Plaintiff Sirmans updated Snicker's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff  Sirmans received emails from HomeAgain informing her that it was time to renew her membership for Snickers. Plaintiff Sirmans chose to renew her pet's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff Sirmans did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

116.    In choosing to purchase the membership, Plaintiff Sirmans relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, on or about August 2018, after receiving numerous emails that her pet's HomeAgain membership was about to expire, Plaintiff Sirmans visited HomeAgain's website and relied on the website's misleading "Check Your Status" tool which stated "[t]his pet's full service annual membership has expired" as well as the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to renew the membership.

117.    Plaintiff Sirmans did not realize she did not need to renew her membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

118.    Had Plaintiff Sirmans known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**M.    Plaintiff Schaller Experience**

119.    Plaintiff Schaller's cat, Larry, received a HomeAgain microchip in May 2016. Plaintiff Schaller paid UGA Community Practice Clinic in  Athens,  Georgia for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

120.    Plaintiff Schaller's cats, Jasper and Binx, received a HomeAgain microchip in June 2021. Plaintiff Schaller paid Firehall 4 Animal Hospital in Athens, Georgia for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

121.    After adopting her pets, Plaintiff Schaller updated Larry, Jasper, and Binx's owner contact info in the HomeAgain database on the HomeAgain website. After 12  months, Plaintiff Schaller received emails from HomeAgain informing her that it was time to renew her pets' memberships. Plaintiff Schaller chose to renew her pets' memberships, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff Schaller did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

122.    In choosing to purchase the membership, Plaintiff relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, in regards to Larry, on or about May 2017, after receiving numerous emails that Larry's HomeAgain membership was about to expire, Plaintiff Schaller visited HomeAgain's website and relied on the website's misleading "Check Your Status" tool which stated "[t]his pet's full service annual membership has expired" as well as the website' homepage, FAQs, and other misrepresentations on the website discussed herein, and the emails she received from HomeAgain about renewing Larry's membership.

123.    Specifically, in regards to Jasper and Binx, on or about June 2022, after receiving numerous emails that her pets' HomeAgain membership was about to expire, Plaintiff Schaller visited HomeAgain's website and relied on the website's misleading "Check Your Status" tool

which stated "[t]his pet's full service annual membership has expired" as well as the website's homepage, FAQs, and other misrepresentations on the website discussed herein, and the emails she received from HomeAgain about renewing her pets' memberships

124.    Since her pets were initially microchipped, Plaintiff Schaller recalls checking her pets' registration on the HomeAgain website using the "Check Your Status" every year.

125.    Plaintiff Schaller did not realize she did not need to renew her membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

126.    Had Plaintiff Schaller known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**N.    Plaintiff Lyell's Experience**

127.    Plaintiff Lyell's dog, Lola, received a HomeAgain microchip in July 2019. Plaintiff Lyell paid Pet Care Clinic in Lincoln Park, Michigan for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

128.    After microchipping her pet, Plaintiff Lyell's vet provided her with a HomeAgain enrollment form that advertised HomeAgain's annual membership services and urged "Please return this form to the HomeAgain Pet Recovery Service or we will not be able to identify your pet if lost." Relying on the enrollment's form warning, Plaintiff Lyell provided her credit card information and filled out Lola's owner contact info. After 12 months, around July 2020, Plaintiff Lyell received emails from HomeAgain informing her that it was time to renew her pet's membership. Plaintiff Lyell chose to renew Lola's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff Lyell did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

129.    In choosing to purchase the membership, Plaintiff Lyell relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically,

Plaintiff Lyell relied on the HomeAgain enrollment form provided by her vet, the website, emails, and marketing materials in deciding to purchase and renew the membership.

130.    Plaintiff Lyell did not realize she did not need to renew her membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

131.    Had Plaintiff Lyell known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**O.    Plaintiff Lesser's Experience**

132.    Plaintiff Lesser's dog, Lucy, received a HomeAgain microchip in April 2015. Plaintiff Lesser paid her veterinarian located in Yardley, Pennsylvania   for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

133.    After microchipping her pet, Plaintiff Lesser's vet provided her with a HomeAgain enrollment form that advertised HomeAgain's annual membership services and urged "Please return this form to the HomeAgain Pet Recovery Service or we will not be able to identify your pet if lost." Relying on the enrollment form, Plaintiff Lesser provided her credit card information and also filled out Lucy's owner contact info. Plaintiff Lesser did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge. After 12 months, around April 2016, Plaintiff Lesser received emails from HomeAgain informing her that it was time to renew her pet's membership. Plaintiff Lesser chose to renew Lucy's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database.

134.    In choosing to purchase the membership, Plaintiff Lesser relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Lesser relied on the HomeAgain enrollment form provided by her vet, the website, emails, and marketing materials in deciding to purchase and renew the membership .

135.    Plaintiff Lesser did not realize she did not need to renew her membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

136.    Had Plaintiff Lesser known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**P.    Plaintiff Ferry's Experience**

137.    Plaintiff Ferry purchased his dog, Bentley, in 2013. Bentley received a HomeAgain microchip prior to being purchased by Plaintiff Ferry.

138.    After purchasing his pet, Plaintiff Ferry updated Bentley's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff received an email from HomeAgain informing him that it was time to renew his membership for Bentley. Plaintiff chose to renew Bentley's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep his contact information up-to-date in the HomeAgain database. Plaintiff Ferry did not know before he paid for the premium service that his contact information would stay in the HomeAgain database free of charge.

139.    In choosing to purchase the membership, Plaintiff Ferry relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Ferry visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew his membership.

140.    Plaintiff Ferry did not realize he did not need to renew the membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

141.    Had Plaintiff Ferry known he did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, he would not have paid it.

**Q.    Plaintiff Gomez's Experience**

142.    Plaintiff Gomez adopted her dog, Kobe, in 2022. Kobe received a HomeAgain microchip prior to being adopted by Plaintiff Gomez.

143.    After adopting her pet, Plaintiff Gomez updated Kobe's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Gomez received an email from HomeAgain informing her that it was time to renew her membership for Kobe. Plaintiff Gomez chose to renew Kobe's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff Gomez did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

144.    In choosing to purchase the membership, Plaintiff Gomez relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Gomez visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew her membership.

145.    Plaintiff did not realize she did not need to renew the membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

146.    Had Plaintiff Gomez known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**R.    Plaintiff Majied's Experience**

147.    Plaintiff Majied's dog, Zena, received a HomeAgain microchip in October 2019. Plaintiff Majied paid her veterinarian, Special Friend Veterinary Clinic located in Aurora, Colorado, for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

148.    After adopting her pet, Plaintiff Majied updated Zena's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Majied received an email from HomeAgain informing her that it was time to renew her membership for Zena. Plaintiff Majied chose to renew Zena's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact

information up-to-date in the HomeAgain database. Plaintiff Majied did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

149.    In choosing to purchase the membership, Plaintiff Majied relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Majied visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew her membership.

150.    Plaintiff did not realize she did not need to renew the membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

151.    Had Plaintiff known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**S.    Plaintiff Crawford' Experience**

152.    Plaintiff Crawford' adopted her dog, Frances, in 2018. Frances was a rescue and received a HomeAgain microchip prior to being adopted by Plaintiff Crawford.

153.    After adopting her pet, Plaintiff updated Frances' owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff received an email from HomeAgain informing her that it was time to renew her membership for Frances. Plaintiff chose to renew Frances' membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

154.    In choosing to purchase the membership, Plaintiff Crawford relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Crawford visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to

pay for and renew her membership.

155.    Plaintiff did not realize she did not need to renew the membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

156.    Had Plaintiff known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**T.    Plaintiff Hes' Experience**

157.    Plaintiff Hes' dog, Jaycee, received a HomeAgain microchip in 2016. Plaintiff Hes paid her veterinarian, Wylie Vet Hospital located in Wylie, Texas for the procedure. Bundled in with the price of the procedure was enrollment in the HomeAgain database, as well as 12 months of free HomeAgain membership.

158.    After adopting her pet, Plaintiff Hes updated Jaycee's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Hes received an email from HomeAgain informing her that it was time to renew her membership for Jaycee. Plaintiff Hes chose to renew Jaycee's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff Hes did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

159.    In choosing to purchase the membership, Plaintiff Hes relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Hes visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew her membership.

160.    Plaintiff Hes did not realize she did not need to renew the membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

161.    Had Plaintiff Hes known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

U.    **Plaintiff Shepardson's Experience**

162.    Plaintiff Shepardson adopted her dog, Stella in 2019. Stella was a rescue and received a HomeAgain microchip prior to being adopted by Plaintiff Shepardson.

163.    After adopting her pet, Plaintiff Shepardson updated Stella's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Shepardson received an email from HomeAgain informing her that it was time to renew her membership for Stella. Plaintiff Shepardson chose to renew Stella's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff Shepardson did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

164.    In choosing to purchase the membership, Plaintiff Shepardson relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Shepardson visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew her membership.

165.    Plaintiff Shepardson did not realize she did not need to renew the membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

166.    Had Plaintiff Shepardson known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

V.    **Plaintiff Radcliffe's Experience**

167.    Plaintiff Radcliffe adopted her dog, Cuzco, in 2017. Cuzco received a HomeAgain microchip prior to being adopted by Plaintiff Radcliffe.

168.    After adopting her pet, Plaintiff Radcliffe updated Cuzco's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Radcliffe received an email from HomeAgain informing her that it was time to renew her membership for Cuzco. Plaintiff Radcliffe chose to renew Cuzco's membership, and pay the $21.99 annual fee,

based on the mistaken belief that such membership was required in order to stay enrolled and keep her contact information up-to-date in the HomeAgain database. Plaintiff Radcliffe did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

169.    In choosing to purchase the membership, Plaintiff Radcliffe relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Radcliffe visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew her membership.

170.    Plaintiff Radcliffe did not realize she did not need to renew the membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

171.    Had Plaintiff Radcliffe known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**W.    Plaintiff Barnum's Experience**

172.    Plaintiff Barnum's adopted her dog, Lido, in 2017. Lido was a rescue and received a HomeAgain microchip prior to being adopted by Plaintiff Barnum.

173.    After adopting her pet, Plaintiff Barnum updated Lido's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Barnum received an email from HomeAgain informing her that it was time to renew her membership for Lido. Plaintiff Barnum chose to renew Lido's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep his contact information up-to-date in the HomeAgain database. Plaintiff Barnum did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

174.    In choosing to purchase the membership, Plaintiff Barnum relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Barnum visited HomeAgain's website and relied on the website's

homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew her membership.

175.    Plaintiff Barnum did not realize he did not need to renew the membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

176.    Had Plaintiff Barnum known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

**X.    Plaintiff Amacher's Experience**

177.    Plaintiff Amacher adopted her dog, Gracy, in 2006. Gracy was a rescue and received a HomeAgain microchip prior to being adopted by Plaintiff Amacher.

178.    Plaintiff Amacher adopted her dog, Dolly, in 2020. Dolly was a rescue and received a HomeAgain microchip prior to being adopted by Plaintiff Amacher.

179.    After adopting her pet, Plaintiff Amacher updated Gracy's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Amacher received an email from HomeAgain informing her that it was time to renew her membership for Gracy. Plaintiff Amacher chose to renew Gracy's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep his contact information up-to-date in the HomeAgain database. Plaintiff Amacher did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

180.    After adopting her pet, Plaintiff Amacher updated Dolly's owner contact info in the HomeAgain database on the HomeAgain website. After 12 months, Plaintiff Amacher received an email from HomeAgain informing her that it was time to renew her membership for Dolly. Plaintiff Amacher chose to renew Dolly's membership, and pay the $21.99 annual fee, based on the mistaken belief that such membership was required in order to stay enrolled and keep his contact information up-to-date in the HomeAgain database. Plaintiff Amacher did not know before she paid for the premium service that her contact information would stay in the HomeAgain database free of charge.

181.    In choosing to purchase the membership for Gracy and Dolly, Plaintiff Amacher relied on HomeAgain's misrepresentations and omissions as to the necessity of paying for membership. Specifically, Plaintiff Amacher visited HomeAgain's website and relied on the website's homepage, FAQs, and other misrepresentations on the website discussed herein in deciding to pay for and renew her membership.

182.    Plaintiff Amacher did not realize she did not need to renew the membership to stay enrolled in the HomeAgain database until after consulting with attorneys.

183.    Had Plaintiff Amacher known she did not need to pay the HomeAgain membership fee to stay in the HomeAgain database, she would not have paid it.

## CLASS ACTION ALLEGATIONS

184.    This action is brought by Plaintiffs individually and on behalf of classes pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**The National Class is defined as follows:**

All persons who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The California Subclass is defined as follows:**

All persons in the state of California who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The New York Subclass is defined as follows:**

All persons in the state of New York who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Maryland Subclass is defined as follows:**

All persons in the state of Maryland who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Florida Subclass is defined as follows:**

All persons in the state of Florida who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The New Jersey Subclass is defined as follows:**

All persons in the state of New Jersey who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Illinois Subclass is defined as follows:**

All persons in the state of Illinois who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Georgia Subclass is defined as follows:**

All persons in the state of Georgia who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Michigan Subclass is defined as follows:**

All persons in the state of Michigan who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Pennsylvania Subclass is defined as follows:**

All persons in the state of Pennsylvania who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Massachusetts Subclass is defined as follows:**

All persons in the state of Massachusetts who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Minnesota Subclass is defined as follows:**

All persons in the state of Minnesota who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Colorado Subclass is defined as follows:**

All persons in the state of Colorado who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Ohio Subclass is defined as follows:**

All persons in the state of Ohio who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Texas Subclass is defined as follows:**

All persons in the state of Texas who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Arizona Subclass is defined as follows:**

All persons in the state of Arizona who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The New Mexico Subclass is defined as follows:**

All persons in the state of New Mexico who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Mississippi Subclass is defined as follows:**

All persons in the state of Mississippi who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

**The Tennessee Subclass is defined as follows:**

All persons in the state of Tennessee who, within the applicable statute of limitations, paid a membership fee to HomeAgain.

185.    Excluded from the Classes are HomeAgain, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

186.    *Numerosity.* The Classes consist of hundreds or thousands of consumers and is thus so numerous that joinder of all members is impracticable.

187.    *Ascertainability.* The identities and addresses of all members of the Classes can be readily ascertained from HomeAgain's business records.

188.    *Typicality.* The claims asserted by Plaintiffs are typical of the claims of members of the Classes inasmuch as Plaintiffs and Class members were deceived by HomeAgain in the same manner.

189.    *Adequacy.* Plaintiffs will fairly and adequately protect the interests of the members of the Classes and do not have any interests antagonistic to those of the other members

of the Classes. In addition, Plaintiffs have retained attorneys who are knowledgeable and experienced in class and complex litigation.

190.    ***Commonality and Predominance.*** Common questions of law and fact affecting members of the Classes predominate over any individualized issues. These predominating common questions include the following:

a.    Whether HomeAgain misrepresented and/or omitted material facts to consumers;

b.    Whether Plaintiff and members of the Classes sustained damages as a result of HomeAgain's conduct; and

c.    Whether Plaintiff and members of the Classes are entitled to damages, restitution, and/or other relief as a remedy for HomeAgain's conduct.

191.    ***Superiority.*** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.    The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

b.    This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

c.    Without a class action, many class members would continue to suffer injury, and Defendant's violations of law will continue without redress while it continues to reap and retain the substantial proceeds of their wrongful

conduct.

192.    ***Manageability.*** This action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF
### Violation of New Jersey's Consumer Fraud Act
### N.J.S.A. 56:8-1 *et seq.*
### (On Behalf of Plaintiff Peng and the New Jersey Class)

193.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

194.    This claim is brought on behalf of Plaintiff Peng and the New Jersey class.

195.    The New Jersey Consumer Fraud Act was enacted by the New Jersey legislature to protect consumers from unfair, unconscionable and deceptive business practices.

196.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Peng and the New Jersey Class members.

197.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Peng and the New Jersey Class members into signing up for its annual memberships based on these misrepresentations and omissions.

198.    Had Plaintiff Peng known membership was not required to stay in the HomeAgain database, he would not have paid for it.

199.    These violations have directly, foreseeably, and proximately caused damages to Plaintiff Peng and the New Jersey Class in an amount yet to be determined.

200.    Accordingly, Plaintiff Peng and New Jersey Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(Asserted On Behalf of Plaintiffs Goodman and Inman and the California Class)**

201.    Plaintiffs Goodman and Inman incorporate the preceding allegations by reference as if fully set forth herein.

202.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." HomeAgain's conduct related to deceptively representing that it provides access to its database for an annual fee violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

203.    The UCL imposes strict liability. Plaintiffs need not prove that HomeAgain intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

204.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

205.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

206.    A business act or practice is "unlawful" under the UCL if it violates any other law

or regulation.

207.    HomeAgain committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting to consumers that they are required to pay an annual fee to maintain and update their pet owner contact information HomeAgain's database when in fact, a one-time fee was only required to be enrolled in the database.

208.    Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

209.    The harm to Plaintiffs Goodman and Inman and the California Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

210.    Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiffs' Third Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that HomeAgain deceptively represents that consumers must pay an annual fee so that their pet's microchip remains in HomeAgain's database; in reality, however, this marketing message is false because HomeAgain's (a) use of the database service causes consumers to pay for an annual membership when there is no need to.

211.    HomeAgain's business practices have misled Plaintiffs Goodman and Inman and the proposed California Class and will continue to mislead them in the future.

212.    Plaintiffs Goodman and Inman relied on Defendant's false representations that the annual membership provides pet owners pet locating services when, fact, the annual fee provides

pet owners with useless services that no reasonable consumer would pay for if they realized what they were actually buying. Specifically, the membership provides pet owners with lost pet alerts, an emergency medical hotline, and travel assistance for lost pets who are found more than 500 miles away from their home. These services provide little practical value and are not the reason that consumers continue to pay the annual fee.

213.    By falsely marketing the pet locator service as an annual fee, HomeAgain deceived Plaintiffs Goodman and Inman and California Class members into renewing and purchasing the annual membership they otherwise would not make.

214.    Had Plaintiffs Goodman and Inman  known the truth of the pet locator membership service fee, *i.e.,* that HomeAgain's "Annual Membership Fee" was useless and that once their pet's microchip was in the HomeAgain database, it was in for life, they would have never chosen to pay an annual fee or chosen a different microchip locator service.

215.    As a direct and proximate result of HomeAgain's unfair, fraudulent, and unlawful practices, Plaintiffs Goodman and Inman and California Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into renewing and purchasing the annual membership under the false belief that HomeAgain's true microchip database fee was prominently represented as an annual fee.

216.    As a result of its unfair, fraudulent, and unlawful conduct, HomeAgain has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and California Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

217.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs Goodman and Inman and the members of the California Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their

unfair, unlawful, and fraudulent practices.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(Asserted On Behalf of Plaintiffs Goodman and Inman and the California Class)**

218.    Plaintiffs Goodman and Inman incorporate the preceding allegations by reference as if fully set forth herein.

219.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*  Plaintiffs Goodman and Inman and each member of the proposed California Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of pet locator products to consumers were "transactions" within the meaning of California Civil Code § 1761(e). Defendant's pet locator service utilized by Plaintiffs Goodman and Inman and the California Class is a "service" within the meaning of California Civil Code § 1761(b). The microchips purchased by Plaintiffs Goodman and Inman and the California Class are "goods" within the meaning of California Civil Code § 1761(a).

220.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs Goodman and Inman and the California Class which were intended to result in, and did result in, the sale of HomeAgain pet microchips and HomeAgain pet locator services:

      a.      "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5); and

      b.      "Advertising goods or services with intent not to sell them as advertised" (a)(9).

221.    Specifically, HomeAgain advertises to customers that the charge for use of its microchip pet locator service represented by the annual fee disclosed, but this is false because

Defendant's annual fee is not necessary to keep the database updated.

222.     At no time does HomeAgain disclose the true nature of its annual fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

223.     HomeAgain continues to violate the CLRA and continues to injure the public by misleading consumers about its microchip pet locator annual fees. Accordingly, Plaintiffs Goodman and Inman seek injunctive relief on behalf of the general public to prevent HomeAgain from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiffs Goodman and Inman, the California Class members, and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

224.     In accordance with Cal. Civ. Code § 1780(a), Plaintiffs Goodman and Inman and the California Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

225.     Pursuant to § 1782(a) of the CLRA, on May 18, 2022, Plaintiffs' counsel, on behalf of Plaintiff Goodman, notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. Pursuant to § 1782(a) of the CLRA, on September 15, 2022, Plaintiffs' counsel, on behalf of Plaintiff INman, notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. Defendant failed to agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of the written notices, as proscribed by §1782. Accordingly, Plaintiffs Goodman and Inman also seek actual, punitive and statutory damages, as

appropriate against Defendant.

**FOURTH CLAIM FOR RELIEF**
**False and Misleading Advertising**
**Business & Professions Code §§ 17500, *et seq*.**
**(Asserted On Behalf of Plaintiffs Goodman and Inman and the California Class)**

226.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

227.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with  intent … to dispose  of ... personal property ... to induce  the  public  to  enter  into  any  obligation  relating  thereto,  to  make  or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

228.    Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

229.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

230.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs Goodman and Inman and the members of the California Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting their membership fees.

231.    Further, Plaintiffs Goodman and Inman and the members of the California Class seek an order requiring Defendant to disclose such misrepresentations, and additionally

request an order awarding Plaintiffs Goodman and Inman restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

232.    Additionally, Plaintiffs Goodman and Inman and the California Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**Violation of N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiff Canetty and the New York Class)**

233.    Plaintiff Canetty incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

234.    This claim is brought on behalf of Plaintiff Canetty and the New York class.

235.    N.Y. Gen. Bus. Law § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

236.    Defendant's actions regarding its annual membership and membership fee, as described herein, are deceptive acts or practices in the conduct of business trade or commerce of pet and animal care.

237.    N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

238.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information

up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff and the Class members.

239.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Canetty and other New York Class members into signing up for its memberships based on these misrepresentations and omissions.

240.    Had Plaintiff Canetty known membership was not required to stay in the HomeAgain database, he would not have paid for it.

241.    Plaintiff Canetty and the New York Class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 349.

242.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

243.    As an actual and proximate result of Defendant's misconduct, Plaintiff Canetty and the New York Class were injured and suffered damages.

244.    Accordingly, Plaintiff Canetty and New York Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**SIXTH CLAIM FOR RELIEF**
**Violation of Maryland's Consumer Protection Act**
**MD. Code Comm. Law §§ 13-101***et seq.*
**(On Behalf of Plaintiff Young and the Maryland Class)**

245.    Plaintiff Young incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

246.    This claim is brought on behalf of Plaintiff Young and the Maryland class.

247.    Plaintiff Young and members of the Maryland Class are "consumers" pursuant to Md. Code Comm. Law § 13-101(c)(1).

248.    Defendant is a "merchant" and "person" pursuant to Md. Code Comm. Law §
13-101(g)-(h).

249.    The Maryland CPA prohibits a person from engaging "in any unfair, abusive, or
deceptive trade practice" including in:

    a.  The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty,
        or consumer services; and

    b.  The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer
        realty or consumer services.

Md. Code. Comm. Law § 13-303.

250.    Defendant's policy and practice of misrepresenting and omitting the nature and
purpose of its annual membership and membership fee as alleged herein is a violation of the
Maryland CPA, including but not limited to:

    c.  False, falsely disparaging, or misleading oral or written statement, visual
        description, or other representation of any kind which has the capacity, tendency,
        or effect of deceiving or misleading consumers;

    d.  Representation that consumer goods, consumer realty, or consumer services have
        a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or
        quantity which they do not have;

    e.  Representation that consumer goods, consumer realty, or consumer services are of
        a particular standard, quality, grade, style, or model which they are not;

    f.  Failure to state a material fact if the failure deceives or tends to deceive;

    g.  Advertisement or offer of consumer goods, consumer realty, or consumer services
        without intent to sell, lease, or rent them as advertised or offered;

    h.  False or misleading representation of fact which concerns a price in comparison to
        one's own price at a past or future time;

    i.  Deception, fraud, false pretense, false premise, misrepresentation, or knowing
        concealment, suppression, or omission of any material fact with the intent that a
        consumer rely on the same in connection with the promotion or sale of any
        consumer goods, consumer realty, or consumer service; and

j.  Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the subsequent performance of a merchant with respect to an agreement of sale, lease, or rental.

251.    Any practice prohibited by the Maryland CPA is a violation of the CPA, whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice. Md. Code. Comm. Law § 13-302.

252.    Plaintiff Young relied upon misrepresentations, misleading statements, deceptive practices, and false promises by Defendant which resulted in injury to her.

253.    Plaintiff Young has suffered an ascertainable loss of money as a result of the Defendant's use or employment of a method, act, or practice prohibited or declared to be unlawful by the provisions of the Maryland CPA.

254.    Plaintiff Young's actual out-of-pocket loss was proximately caused by Defendant's violation of the CPA.

255.    Should Plaintiff Young prevail in this action, reasonable attorneys' fees and costs are to be awarded pursuant to Md. Code. Comm. Law § 13-408(b).

**SEVENTH CLAIM FOR RELIEF**
**Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. § 501.201, *et seq.***
**(On Behalf of Plaintiff Berris and the Florida Class)**

256.    Plaintiff Berris incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

257.    This claim is brought on behalf of Plaintiff Berris and the Florida class.

258.    This cause of action is brought under Florida's Deceptive and Unfair Trade Practices Act § 501.201, *et seq*.

259.    The stated purpose of the FDUTPA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

260.    Plaintiff Berris and members of the Florida Class are "consumers" as defined by Fla. Stat. § 501.203(7).

261.    Defendant engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8) by providing pet microchip services.

262.    Defendant committed deceptive acts and practices in violation of the FDUTPA by affirmatively and knowingly misrepresenting, on its website and marketing materials, that enrollment its annual membership was required in order to keep pet owners' contact information current in its database.

263.    Defendant's actions regarding its annual membership and pet microchip service, as described herein, are deceptive acts or practices in the conduct of business, trade, or commerce of goods.

264.    Fla. Stat. § 501.211(2) provides that "any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105."

265.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff and other class members into signing up for its memberships based on these misrepresentations and omissions.

266.    Defendant's misleading and deceptive conduct regarding its annual membership and membership fee is a practice that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment.

267.    Had Plaintiff Berris known membership was not required to stay in the HomeAgain database, she would not have paid for it.

268.    As a direct and proximate result of Defendant's misconduct, Plaintiff Berris and the Florida Class were injured and suffered actual damages.

269.    Accordingly, Defendant is liable to Plaintiff Berris and the Florida Class members for damages in amounts to be proven at trial.

**EIGTH CLAIM FOR RELIEF**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act,**
**§ 815 ILCS 505, *et seq.***
**(On Behalf of Plaintiff Sirmans and the Illinois Class)**

270.    Plaintiff Sirmans incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

271.    Plaintiff Sirmans brings this claim against Defendant under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*, on behalf of herself and the Illinois Class.

272.    Defendant is a "person" as defined by 815 ILCS § 505/1(c).

273.    Plaintiff Sirmans, as well as each member of the Illinois Class, are both a "person" as defined by 815 ILCD § 505/1(c) as well as actual or potential "consumer[s]" of the products and services offered by Defendant, or are successors in interest to actual persons or consumers as defined by 815 ILCS § 505/1.

274.    The circumstances that relate to the transactions giving rise to this claim occurred primarily and substantially in Illinois because Defendant caused to be disseminated throughout the state of Illinois through advertising, marketing, and other publications, statements that were deceptive and misleading, and which it knew were untrue and misleading.

275.    Defendant's course of conduct involved trade or commerce, as its actions were

taken in the course of its business in Illinois.

276.    Defendant's conduct was unfair and deceptive in that Defendant used and employed deception, fraud, false promises, and misrepresentations about the nature of its membership and database.

277.    Defendant's conduct was also unfair and deceptive in that Defendant used and employed concealment, suppression, and omission of material facts as to the nature of its membership and annual fee.

278.    Defendant's conduct was unlawful. Defendant's conduct violated Illinois law because its advertisements represent that its annual membership contains characteristics that it does not have.

279.    Defendant advertised its annual membership with the intent not to sell its services as advertised.

280.    Defendant's advertisements and promotions created a likelihood of confusion and misunderstanding among consumers.

281.    Defendant's misrepresentations were material because they were likely to deceive reasonable consumers about the nature of their services, inducing them into purchasing and/or renewing their annual HomeAgain membership. These misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.

282.    Defendant intended to mislead Plaintiff Sirmans and the other Illinois class members and induced them to rely on its misrepresentations and omissions.

283.    Had Plaintiff Sirmans and the other Illinois Class members known the truth about Defendant's annual memberships, they would not have purchased annual memberships from Defendant.

284.    As a direct and proximate result of Defendant's unfair and deceptive practices,

Plaintiff and the Illinois Class suffered injuries in the form of monetary losses when they purchased an annual membership in reliance on Defendant's website and marketing materials which created the impression the annual membership was required to keep their pet owner contact information in Defendant's database.

285.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Sirmans and the Illinois Class that they could not reasonably avoid.

286.    Defendant knew or should have known that its misrepresentations and omissions would deceive Plaintiff Sirmans and the Illinois Class. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were willful, intention, and/or done with reckless indifference with respect to the rights of Plaintiff Sirmans and the Illinois class.

287.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Sirmans and the Illinois Class and will continue to both damage Plaintiff Sirmans and the Illinois Class and deceive the public unless enjoined by this Court.

288.    Plaintiff Sirmans and the Illinois Subclass seek relief under the Illinois Consumer Protection and Deceptive Business Practices Act, including (but not limited to) actual damages, compensatory damages, statutory damages, restitution, penalties, injunctive relief, punitive damages, and/or attorney's fees and costs.

## NINTH CLAIM FOR RELIEF
### Violation of Georgia's Fair Business Practices Act
### Ga. Code Ann. § 10-1-390, *et seq.*
### (On Behalf of Plaintiff Schaller and the Georgia Class)

289.    Plaintiff Schaller incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

290.    This claim is brought on behalf of Plaintiff Schaller and the Georgia class.

291. The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]fair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code Ann. § 10-1-393(a).

292. In the course of its business, Defendant, through its agents and/or employees, violated the Georgia FBPA.

293. Defendant affirmatively misrepresented the membership's nature -- a material fact that was false. In so doing, and by marketing, offering for sale, and selling the annual membership, Defendant engaged in one or more of the following unfair or deceptive acts or practices as defined in Ga. Code Ann. § 10-1-393(b): 1) "[r]epresenting that goods or services have . . . characteristics, uses, benefits, or quantities that they do not have[;]" 2) "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another;" and 3) "[a]dvertising goods or services with intent not to sell them as advertised[.]"

294. Defendant's scheme and concealment of the true characteristics of the annual membership was material to Plaintiff Schaller's and the other Georgia Class members' as Defendant intended. Had they known the truth, Plaintiff and the other Georgia Class members would not have purchased the annual membership or would have had their pets microchipped with another company.

295. Plaintiff and the other members of the Georgia Class had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

296. Defendant had an ongoing duty to Plaintiff Schaller and the other Georgia Class members to refrain from unfair and deceptive practices under the Georgia FBPA in the course of its business. Specifically, Defendant owed Plaintiff Schaller and the other Georgia Class members a duty to disclose all of the material facts concerning the true nature of their annual

membership because Defendant possessed exclusive knowledge and intentionally concealed it from Plaintiff Schaller and the other members of the Georgia Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

297. Plaintiff Schaller and the other Georgia Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

298. Defendant's violations present a continuing risk to Plaintiff Schaller and the other members of the Georgia Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

299. Pursuant to Ga. Code Ann. § 10-1-399, Plaintiff Schaller and the other members of the Georgia Class seek an order: 1) enjoining Defendant's unfair and/or deceptive acts or practices; 2) awarding general and punitive damages in an amount to be proven at trial; 3) awarding costs and attorneys' fees; and 4) awarding any other just and proper relief available under the Georgia FBPA.

300. On April 10, 2023, Plaintiff Schaller sent notice to Defendant complying with Ga. Code Ann. § 10-1-399(b). If Defendant fails to remedy its unlawful conduct within the requisite time period, Plaintiff Schaller seeks all damages and relief to which Plaintiff and the other Georgia Class members are entitled.

### TENTH CLAIM FOR RELIEF
**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**
**73 Pa. Cons. Stat. §§ 201-2 & 201-3, et seq, *et seq.***
**(On Behalf of Plaintiff Lesser and the Pennsylvania Class)**

301. Plaintiff Lesser incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

302.    This claim is brought on behalf of Plaintiff Lesser and the Pennsylvania class.

303.    Defendant is a "person" as defined by 73 Pa. Cons. Stat. § 201-2(2).

304.    Plaintiff Lesser and the Class members purchased services in "trade" and "commerce," as defined by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

305.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL"), 73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq.*, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

306.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Pennsylvania UTPCPL by knowingly and intentionally concealing and failing to disclose material facts regarding annual membership, as detailed above.

307.    Defendant violated and continues to violate the  Pennsylvania UTPCPL by engaging in the following practices proscribed by 73 Pa. Cons. Stat. §§ 201-2 in transactions with Plaintiff Lesser and the Pennsylvania Class which were intended to result in, and did result in, the sale of HomeAgain pet microchips and HomeAgain pet locator services:

   a.   "Representing that goods or services have . . . characteristics . . . that they do not have" (4)(v); and

   b.   "Advertising goods or services with intent not to sell them as advertised" (4)(ix).

308.    Defendant's misrepresentations and omissions regarding its annual membership fee were made to Plaintiff Lesser and the Class members in a uniform manner.

309.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Lesser and the Pennsylvania Class

members, about Defendant's annual membership fee.

310.    Defendant's conduct was unfair and deceptive in that Defendant used and employed deception, fraud, false promises, and misrepresentations about the nature of its annual membership and database.

311.    Defendant's conduct was also unfair and deceptive in that Defendant used and employed concealment, suppression, and omission of material facts as to the nature of its membership and annual fee.

312.    Defendant's advertisements and promotions created a likelihood of confusion and misunderstanding among consumers.

313.    Defendant's misrepresentations were material because they were likely to deceive reasonable consumers about the nature of their services, inducing them into purchasing and/or renewing their annual HomeAgain membership. These misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.

314.    Defendant intended to mislead Plaintiff Lesser and the other Pennsylvania class members and induced them to rely on its misrepresentations and omissions.

315.    Had Plaintiff Lesser and the other Pennsylvania Class members known the truth about Defendant's annual memberships, they would not have purchased annual memberships from Defendant.

316.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the Pennsylvania Class suffered injuries in the form of monetary losses when they purchased an annual membership in reliance on Defendant's website and marketing materials which created the impression the annual membership was required to keep their pet owner contact information in Defendant's database.

317.    The above unfair and deceptive practices and acts by Defendant were immoral,

unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Lesser and the Pennsylvania Class that they could not reasonably avoid.

318.    Defendant knew or should have known that its misrepresentations and omissions would deceive Plaintiff Lesser and the Pennsylvania Class. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were willful, intention, and/or done with reckless indifference with respect to the rights of Plaintiff Lesser and the Pennsylvania class.

319.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Lesser and the Pennsylvania Class and will continue to both damage Plaintiff Lesser and the Pennsylvania Class and deceive the public unless enjoined by this Court.

320.    Plaintiff Lesser and the Pennsylvania Class seek relief under the Pennsylvania's Unfair Trade Practices and Consumer Protection Law, including (but not limited to) actual damages, compensatory damages, statutory damages, restitution, penalties, injunctive relief, punitive damages, and/or attorney's fees and costs.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of Michigan's Consumer Protection Act**
**Mich. Comp. Laws §§ 445.901 through 445.922, *et seq.***
**(On Behalf of Plaintiff Lyell and the Michigan Class)**

321.    Plaintiff Lyell incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

322.    This claim is brought on behalf of Plaintiff Lyell and the Michigan class.

323.    Defendant is a "person" as defined by Mich. Comp. Laws Ann. § 445.902(d).

324.    Plaintiff Lyell and the Class members purchased services in "trade" and "commerce," as defined by Mich. Comp. Laws Ann. § 445.902(g), primarily for personal, family, and/or household purposes.

325.    The Michigan Consumer Protection Act ("Michigan CPA"), Mich. Comp. Laws §§ 445.901 through 445.922, *et seq*., prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

326.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally concealing and failing to disclose material facts regarding annual membership, as detailed above.

327.    Defendant violated and continues to violate the  Michigan CPA by engaging in the following practices proscribed by Mich. Comp. Laws Ann. § 445.903 in transactions with Plaintiff Lyell and the Pennsylvania Class which were intended to result in, and did result in, the sale of HomeAgain pet microchips and HomeAgain pet locator services:

> c.    "Representing that goods or services have . . . characteristics . . . that they do not have" (1)(c); and
>
> d.    "Advertising or representing goods or services with intent to to dispose of those goods or services as advertised or represented" (1)(g).

328.    Defendant's misrepresentations and omissions regarding its annual membership fee were made to Plaintiff Lyell and the Michigan Class members in a uniform manner.

329.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Lyell and the Michigan Class members, about Defendant's annual membership fee.

330.    Defendant's conduct was unfair and deceptive in that Defendant used and employed deception, fraud, false promises, and misrepresentations about the nature of its annual

membership and database.

331.    Defendant's conduct was also unfair and deceptive in that Defendant used and employed concealment, suppression, and omission of material facts as to the nature of its membership and annual fee.

332.    Defendant's advertisements and promotions created a likelihood of confusion and misunderstanding among consumers.

333.    Defendant's misrepresentations were material because they were likely to deceive reasonable consumers about the nature of their services, inducing them into purchasing and/or renewing their annual HomeAgain membership. These misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.

334.    Defendant intended to mislead Plaintiff Lyell and the other Michigan class members and induced them to rely on its misrepresentations and omissions.

335.    Had Plaintiff Lyell and the other Michigan Class members known the truth about Defendant's annual memberships, they would not have purchased annual memberships from Defendant.

336.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff Lyell and the Michigan Class suffered injuries in the form of monetary losses when they purchased an annual membership in reliance on Defendant's website and marketing materials described herein which created the impression the annual membership was required to keep their pet owner contact information in Defendant's database.

337.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Lyell and the Michigan Class that they could not reasonably avoid.

338.    Defendant knew or should have known that its misrepresentations and omissions

would deceive Plaintiff Lyell and the Michigan Class. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were willful, intention, and/or done with reckless indifference with respect to the rights of Plaintiff Lyell and the Michigan Class.

339.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Lyell and the Michigan Class and will continue to both damage Plaintiff Lyell and the Michigan Class and deceive the public unless enjoined by this Court.

340.    Plaintiff Lyell and the Michigan Class seek relief under the Michigan CPA, including (but not limited to) actual damages, compensatory damages, statutory damages, restitution, penalties, injunctive relief, punitive damages, and/or attorney's fees and costs.

**TWELFTH CLAIM FOR RELIEF**
**Violation of Massachusetts's Consumer Protection Act**
**Mass. Gen. Laws Ann. ch. 93A, §§ 1 *et seq.***
**(On Behalf of Plaintiff Ferry and the Massachusetts Class)**

341.    Plaintiff Ferry incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

342.    This claim is brought on behalf of Plaintiff Ferry and the Massachusetts Class.

343.    Plaintiff Ferry and members of the Massachusetts Class are "persons" pursuant to Mass. Gen. Laws Ann. ch. 93A, § 1(a).

344.    Defendant engages in "Trade" and "Commerce" pursuant to Mass. Gen. Laws Ann. ch. 93A, § 1(a) by providing pet microchip services.

345.    Mass. Gen. Laws Ann. ch. 93A, § 2(a) declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

346.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting

and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Ferry and the Massachusetts Class members.

347.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Ferry and the Massachusetts Class members into signing up for its annual memberships based on these misrepresentations and omissions.

348.    Had Plaintiff Ferry known membership was not required to stay in the HomeAgain database, he would not have paid for it.

349.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

350.    As an actual and proximate result of Defendant's misconduct, Plaintiff Ferry and the Massachusetts Class were injured and suffered damages.

351.    Accordingly, Plaintiff Ferry and the Massachusetts Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**THIRTEENTH CLAIM FOR RELIEF**
**Violation of Minnesota's Prevention of Consumer Fraud Act**
**Minn. Stat. §§ 325F.68 , *et seq.***
**(Asserted On Behalf of Plaintiff Gomez and the Minnesota Class)**

352.    Plaintiff Gomez incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

353.    This claim is brought on behalf of Plaintiff Gomez and the Minnesota Class.

354.    Plaintiff Gomez and members of the Minnesota Class are "persons" pursuant to Minn. Stat. § 325F.68 (3).

355.    Pursuant to Minn. Stat. § 325F.69 (1) unlawful practices include, "[t]he act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby."

356.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Gomez and the Minnesota Class members.

357.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Gomez and the Minnesota Class members into signing up for its annual memberships based on these misrepresentations and omissions.

358.    Had Plaintiff Gomez known membership was not required to stay in the HomeAgain database, she would not have paid for it.

359.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

360.    As an actual and proximate result of Defendant's misconduct, Plaintiff Gomez and the Minnesota Class were injured and suffered damages.

361.    Accordingly, Plaintiff Gomez and the Minnesota Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**FOURTEENTH CLAIM FOR RELIEF**
**Colorado's Consumer Protection Act**
**Colo. Rev. Stat. §§ 6-1-101, *et seq*.**
**(Asserted On Behalf of Plaintiff Majied and the Colorado Class)**

362.    Plaintiff Majied incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

363.    This claim is brought on behalf of Plaintiff Majied and the Colorado Class.

364.    Plaintiff Majied and members for the Colorado Class are considered "Persons" pursuant to Colo. Rev. Stat. §6-1-102 (6).

365.    Defendant is a "Person" pursuant to Colo. Rev. Stat. §6-1-102 (6).

366.    Colo. Rev. Stat. §6-1-105 prohibits a person from engaging in deceptive trade practice when, in the course of the person's business.

367.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Majied and the Colorado Class members.

368.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Majied and the Colorado Class members into signing up for its annual memberships based on these misrepresentations and omissions.

369.    Had Plaintiff Majied known membership was not required to stay in the HomeAgain database, she would not have paid for it.

370.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

371.    As an actual and proximate result of Defendant's misconduct, Plaintiff Majied and the Colorado Class were injured and suffered damages.

372.    Accordingly, Plaintiff Majied and the Colorado Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**FIFTEENTH CLAIM FOR RELIEF**
**Ohio Consumer Sales Practices Act**
**Violation of Ohio Rev. Code Ann. §§ 1345.01**
**(On Behalf of Plaintiff Crawford and the Ohio Class)**

373.    Plaintiff Crawford incorporated and restates by reference all of the preceding allegations as though fully set forth herein.

374.    This claim is brought on behalf of Plaintiff Crawford and the Ohio Class.

375.    Plaintiff Crawford and members of the Ohio Class are "Persons" and "Consumers" pursuant to Ohio Rev. Code Ann. §1345.01.

376.    Defendant is a "Supplier" pursuant to Ohio Rev. Code Ann. §1345.01.

377.    Pursuant to Ohio Rev. Code Ann. §1345.02 "[n]o supplier shall commit an unfair or deceptive act or practice in connect with a consumer transaction. Such an unfair or deceptive act or practice by supplier violates this section whether it occurs before, during, or after the transaction.

378.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in

such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Crawford and the Ohio Class members.

379.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Crawford and the Ohio Class members into signing up for its annual memberships based on these misrepresentations and omissions.

380.    Had Plaintiff Crawford known membership was not required to stay in the HomeAgain database, she would not have paid for it.

381.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

382.    As an actual and proximate result of Defendant's misconduct, Plaintiff Crawford and the Ohio Class were injured and suffered damages.

383.    Accordingly, Plaintiff Crawford and the Ohio Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**SIXTEENTH CLAIM FOR RELIEF**
**Violation of Texas's Consumer Protection Act**
**Tex. Bus. & Com. Code Ann. §§ 17.41*et seq.***
**(On Behalf of Plaintiff Hes and the Texas Class)**

384.    Plaintiff Hes incorporated and restates by reference all of the preceding allegations as though fully set forth herein.

385.    This claim is brought on behalf of Plaintiff Hes and the Texas Class.

386. Plaintiff Hes and members of the Texas Class are "Persons" and "Consumers" pursuant to Tex. Bus. & Com. Code Ann. § 17.45.

387. Defendant engages in "Trade" and "Commerce" pursuant to Tex. Bus. & Com. Code Ann. § 17.45.

388. Pursuant to Tex. Bus. & Com. Code Ann. § 17.46 (a) "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful…"

389. Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Hes and the Texas Class members.

390. Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Hes and the Texas Class members into signing up for its annual memberships based on these misrepresentations and omissions.

391. Had Plaintiff Hes known membership was not required to stay in the HomeAgain database, she would not have paid for it.

392. Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

393. As an actual and proximate result of Defendant's misconduct, Plaintiff Hes and the Texas Class were injured and suffered damages.

394.     Accordingly, Plaintiff Hes and the Texas Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**SEVENTEENTH CLAIM FOR RELIEF**
**Violation of Arizona's Consumer Fraud Act**
**Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.***
**(On Behalf of Plaintiff Shepardson and the Arizona Class)**

395.     Plaintiff Shepardson incorporates and restates by reference all of the preceding allegations as though full set forth herein.

396.     This claim is brought on behalf of Plaintiff Shepardson and the Arizona Class.

397.     Plaintiff Shepardson or members of the Arizona Class are "Persons" pursuant to Ariz. Rev. State. Ann. § 44-1521.

398.     Pursuant to Ariz. Rev. Stat. Ann. § 44-1522, "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

399.     Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Shepardson and the Arizona Class members.

400.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Shepardson and the Arizona Class members into signing up for its annual memberships based on these misrepresentations and omissions.

401.    Had Plaintiff Shepardson known membership was not required to stay in the HomeAgain database, she would not have paid for it.

402.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

403.    As an actual and proximate result of Defendant's misconduct, Plaintiff Shepardson and the Arizona Class were injured and suffered damages.

404.    Accordingly, Plaintiff Shepardson and the Arizona Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**EIGHTEENTH CLAIM FOR RELIEF**
**Violation of New Mexico's Unfair Practices Act,**
**N.M. Stat. §§ 57-12-1, *et seq.***
**(On Behalf of Plaintiff Radcliffe and the New Mexico Class)**

405.    Plaintiff Radcliffe incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

406.    This claim is brought on behalf of Plaintiff Radcliffe and the New Mexico Class.

407.    Plaintiff Radcliffe and the members of the New Mexico Class are "Persons" pursuant to N.M. State. § 57-12-1.

408.    "Unfair or deceptive trade practice is defined pursuant to N.M. Stat. § 57-12-1 (D) as "false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the

person's trade or commerce, that may, tends to or does deceive or mislead any person…"

409.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Radcliffe and the New Mexico Class members.

410.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Radcliffe and the New Mexico Class members into signing up for its annual memberships based on these misrepresentations and omissions.

411.    Had Plaintiff Radcliffe known membership was not required to stay in the HomeAgain database, she would not have paid for it.

412.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

413.    As an actual and proximate result of Defendant's misconduct, Plaintiff Radcliffe and the New Mexico Class were injured and suffered damages.

414.    Accordingly, Plaintiff Radcliffe and the New Mexico Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## NINETEENTH CLAIM FOR RELIEF
### Violation of Mississippi's Consumer Protection Act
### Miss. Code Ann. §§ 75-24-1, *et seq*.
### On Behalf of Plaintiff Barnum and the Mississippi Class)

415.    Plaintiff Barnum incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

416.    This claim is brought on behalf of Plaintiff Barnum and the Mississippi Class.

417.    Plaintiff Barnum and members of the Mississippi Class are "Consumers" and "Persons" pursuant to Miss. Code Ann. § 75-24-1,

418.    Pursuant to Miss. Code Ann. § 75-24-5 (1) "unfair or deceptive trade practices in or affecting commerce are prohibited.

419.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Barnum and the Mississippi Class members.

420.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Barnum and the Mississippi Class members into signing up for its annual memberships based on these misrepresentations and omissions.

421.    Had Plaintiff Barnum known membership was not required to stay in the HomeAgain database, she would not have paid for it.

422.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

423.    As an actual and proximate result of Defendant's misconduct, Plaintiff Barnum and the Mississippi Class were injured and suffered damages.

424.    Accordingly, Plaintiff Barnum and the Mississippi Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**TWENTIETH CLAIM FOR RELIEF**
**Tennessee's Consumer Protection Law**
**Tenn. Code Ann. §§ 47-18-101, *et seq.***
**(On Behalf of Plaintiff Amacher and the Tennessee Class)**

425.    Plaintiff Amacher incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

426.    This claim is brought on behalf of Plaintiff Amacher and the Tennessee Class.

427.    The Tenn. Code Ann § 47-18-101 prohibits unfair or deceptive acts or practices affecting the conduct of any trade or commerce.

428.    Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the nature and purpose of its annual membership and membership fee. Specifically, Defendant misrepresented that membership was required in order to keep contact information up-to-date in its database. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff Amacher and the Tennessee Class members.

429.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff Amacher and the Tennessee Class members into signing up for its annual memberships based on these misrepresentations and omissions.

430.    Had Plaintiff Amacher known membership was not required to stay in the HomeAgain database, she would not have paid for it.

431.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

432.    As an actual and proximate result of Defendant's misconduct, Plaintiff Amacher and the Tennessee Class were injured and suffered damages.

433.    Accordingly, Plaintiff Amacher and the Tennessee Class members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes pray for judgment as follows:

A.    Certifying this action for class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding Plaintiffs and the Classes compensatory, consequential, statutory, treble, and punitive damages in an amount to be proven at trial;

C.    Awarding Plaintiffs and the Classes pre-judgment and post-judgment interest, as well as attorneys' fees and costs, at the maximum rate allowed by law;

D.    Issuing declaratory and injunctive relief to prevent HomeAgain's ongoing deceptive conduct as asserted herein; and

E.    Awarding Plaintiffs and the Classes such other relief as this Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: September 5, 2024                    _/s/ Rachel Dapeer_____

Rachel Dapeer
**DAPEER LAW, P.A.**
New Jersey Bar No. 039272011
3331 Sunset Avenue
Ocean, New Jersey 07712
Telephone: 305-610-5223
rachel@dapeer.com

Andrew J. Shamis (admitted *pro hac vice*)
Edwin E. Elliott (admitted *pro hac vice*)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com
edwine@shamisgentile.com

Sophia G. Gold (admitted *pro hac vice*)
**KALIELGOLD PLLC**
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Scott Edelsberg (admitted *pro hac vice*)
**EDELSBERG LAW, PA**
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Counsel for Plaintiffs and*
*the Proposed Classes*